## MRS. HOMER STEVENSON v. ROLAND MAGILL.

(L.R.A. —, —, 160 N. W. 700.)

**Farm laborer's lien — foreclosure of — action for — cooking in cook car — threshing — validity of lien — class of labor — title to machine.**

1. Plaintiff seeks to foreclose her farm laborer's lien for labor performed by her in cooking in a cook-car for a threshing crew while threshing Magill's grain in September and October, 1915. Defendant claims a sale of the threshing rig to another, who hired plaintiff and the threshing crew, and denies responsibility. He also asserts that a farm laborer's lien cannot be claimed for work of the kind performed. From a judgment of dismissal plaintiff appeals, demanding trial *de novo*.

*Held:* Under the facts title to the threshing machine is not shown to have passed to the third party, who is held to be either an agent or partner of defendant and engaged with him in a joint venture of threshing defendant's grain. That defendant should be held liable for payment of plaintiff's wages.

**Farm laborer's lien — work in cooking — cook car — threshing crew — crops.**

2. Plaintiff is entitled to a farm laborer's lien, her work contributing directly to threshing of the crop. The case is not governed by Lowe v. Abrahamson, 18 N. D. 182.

Opinion filed November 25, 1916. Rehearing denied December 30, 1916.

Judgment for foreclosure directed.

Appeal from District Court of Ransom County, *Allen,* Judge, dismissing this action.

Reversed and judgment ordered for plaintiff.

*J. V. Backlund,* for appellant.

The object of the statute in question is to secure workers in their rightful wages, and such statutes are liberally construed. Sutherland, Stat. Constr. § 409; Lowe v. Abrahamson, 18 N. D. 182, 19 L.R.A. (N.S.) 1039, 119 N. W. 241, 20 Ann. Cas. 355; Heddan v. Walden Farmers Elevator Co. 31 N. D. 392, 153 N. W. 1015.

A farm laborer is one who labors upon a farm in helping to raise the

NOTE.—On who is "farm" or "agricultural" laborer within a statute giving a lien for the wages of farm laborers, see note in 19 L.R.A. (N.S.) 1039, to Lowe v. Abrahamson, 18 N. D. 182, 119 N. W. 241, 20 Ann. Cas. 355, which case is referred to in the opinion above.

crops and doing other general farm work; one who does cooking in a cook car for a threshing crew while threshing the crop is a farm laborer within the meaning of the statute. Lowe v. Abrahamson, supra; Seider's Appeal, 46 Pa. 57; Wentroth's Appeal, 82 Pa. 469; Wildner v. Ferguson, 42 Minn. 112, 6 L.R.A. 338, 18 Am. St. Rep. 485, 43 N. W. 794.

All those who labor on the farm are engaged in one common purpose, —that of raising, securing, and governing the crops. Farinholt v. Luckhard, 90 Va. 936, 44 Am. St. Rep. 952, 21 S. E. 817; Breault v. Archambault, 64 Minn. 420, 58 Am. St. Rep. 545, 67 N. W. 348.

The further object of the statute is to protect all farm laborers and the interests of labor, and a sound public policy requires that it be liberally construed. Breault v. Archambault, supra; 2 C. J. 1006, 61; Watson v. Auerbach, 57 Ala. 353; Parks v. Simpson, 124 Ga. 523, 52 S. E. 616.

A joint adventure is an enterprise undertaken by several persons jointly. The contract need not be express, but may be implied from the conduct of the parties. Knapp v. Hanley, 108 Mo. App. 353, 83 S. W. 1005; 23 Cyc. 453, 462; 29 Century Dig. 8; Still v. Holbrook, 23 Hun, 517; Clark v. Rumsey, 52 N. Y. Supp. 417.

*A. C. Lacy,* for respondent.

The labor performed, in order to entitle one to a laborer's lien, must be strictly farm labor in, about, and upon the farm in raising or harvesting the crops, and such crops must be raised by the person for whom the work is done. Comp. Laws 1913, § 6857.

Working for a thresher in a cook car, cooking for his threshing crew, is not farm labor performed for the one who raises and harvests a crop. Lowe v. Abrahamson, 18 N. D. 182, 19 L.R.A.(N.S.) 1039, 119 N. W. 241, 20 Ann. Cas. 355; Meade v. First Nat. Bank, 24 N. D. 12, 138 N. W. 365.

Goss, J. This action is brought to foreclose a farm laborer's lien. Plaintiff, a woman, performed labor as a cook in a cook car in threshing Magill's grain in September and October, 1915. The trial court dismissed the case, from which judgment plaintiff appeals, demanding a trial *de novo.* The proof discloses that in the fall of 1915 Magill had about 20,000 bushels of grain to be threshed. He owned his own thresh-

ing rig. He entered into an indefinite oral understanding with one A. J. Kelly under which, to put it in Magill's own language, "Kelly was to have the machine when he completed threshing" for Magill. "There wasn't nothing expressly named in the amount of dollars, but he was to thresh my crop for the rig complete." The value of the rig is not stated. Magill said, in substance, that he wouldn't let Kelly move off the place until his threshing was done. Kelly assumed charge of the rig and moved it on Magill's farm with the cook car at Magill's buildings, where it remained. Kelly employed a crew, and, among them, the plaintiff as cook. Rainy weather prevented continuous work and from the 1st of September until the 6th of October, 1915, the period during which plaintiff cooked for the threshing outfit, only about 3,000 bushels of wheat and 4,000 bushels of oats were threshed. No threshing was done at any other place than Magill's. He advanced money to Kelly from time to time to pay for machine repairs, provision, and expenses, to an amount, he says, of about $400. Magill's figures and account are wholly indefinite and unsatisfactory, being merely estimates. He refused to be specific and certain. Several of Magill's teams and men were working as a part of Kelly's crew, and Kelly was charged with their wages, Magill claims. Some ten days or two weeks before Kelly abandoned further performance of the alleged contract and threw up the deal, plaintiff told Magill to keep enough back to pay her wages, as he was paying Kelly money from time to time. She says: "I would like if you would hold out my wages. Kelly is drawing the wages and it isn't coming to the cook car. He goes to town and doesn't come back until it is all gone. I am working here every day, and I know the money all comes through you and I would like to have you to hold out my wages. And he says: "Sure, I will do that. You are the one that needs the money if anyone does, in preference to these hoboes who sit around here and play poker." The evidence is in dispute as to the amount of threshing that was done after this talk, but thereafter Magill paid Kelly at least $70. On October 6th plaintiff quit for non-payment of her wages. Kelly then told plaintiff that Magill was taking the rig back and that he, Kelly, was not going ahead with the deal. Magill took the rig back, he says, and decided not to run the machine, but to hire his threshing done by another rig, and refused to provision the outfit. Plaintiff shortly afterwards filed her farm laborer lien,

claiming $106.50 for thirty-five and one-half days' work at cooking for the outfit while they were threshing defendants' crop. It is admitted that there was no price per bushel fixed for whatever threshing was done or was to be done. It was understood that Magill would make some advances to Kelly, known by him to be without means. The lien was filed against both Kelly and Magill, and against the crop threshed, but Magill is sole defendant. He claims that he had sold the rig to Kelly, who had hired plaintiff, and that he was not responsible for her wages, and also that no farm laborer's lien is allowed by law for such services.

The proof fails to disclose that title to the rig ever parted from Magill, or that it was not the joint venture of Kelly and Magill. It is true that he testifies, in response to leading questions from his counsel, that he turned the rig over to Kelly and sold it to him and placed him in possession of it, and took it back eventually, but the circumstances are such as to require stronger proof than this of his parting with title. There was no written agreement, and it is indefinite as to whether title was to pass with the delivery of the possession or not until after all of Magill's threshing was done and his advances repaid, or when "the job was completed," as Magill first states was the fact, and which is more probable. Several rigs and teams were furnished by Magill, and he was to receive wages for them and was to receive this back after the threshing was done and Kelly had earned enough elsewhere to repay him, but it is admitted that the machine was not to leave Magill's farm until his threshing was done. It is also a circumstance that, as Magill states, no settlement was had when Kelly threw up the rig and he took it back. Everything was then left as indefinite as was the contract under which it was turned over, if at all, to Kelly in the first instance. To require less than certainty in the terms of the contract as to when the title passes, under such circumstances, would leave a situation such as to permit a party in Magill's position, by making an indefinite deal, to shirk responsibility for wages and expenses of his threshing upon any ne'er-do-well that he might see fit to ostensibly turn his rig over to. A lawsuit is the usual outcome of such a condition of affairs. On the other hand, from plaintiff's viewpoint, the judgment rendered was wholly inequitable and unjust, and amounts to little short of fraud upon her. Magill had knowledge that she was cooking for the crew, and that

her work was keeping the crew together all through the rainy weather and from the very first until the last day of her employment, as the cook car was at Magill's home and in his yard, and he must have known that she was cooking for the crew.  Ten days or two weeks before the inevitable result came she had a talk with him, and he knew she was not getting her wages, and she says he promised to hold out enough money from Kelly to pay her, and evidently relying upon him she continued work.  Under all the circumstances the fair inference is that Kelly was the agent or employee, or, at the most, virtually a partner of and with defendant Magill and for whose acts in employing this plaintiff, of which defendant had notice, defendant should be held responsible.

But it is claimed that under the authority of Lowe v. Abrahamson, 18 N. D. 182, 19 L.R.A.(N.S.) 1039, 119 N. W. 241, 20 Ann. Cas. 355, the plaintiff has not performed work for which she can claim a farm laborer's lien.  This contention is fallacious.  What was said in Lowe v. Abrahamson evidently lead the learned trial judge to adopt defendant's theory in dismissing this case.  But that case went far from holding that a farm laborer's lien could not be claimed simply because the work was performed by a woman.  There is no sufficient reason why, where a woman performs labor for which a man might claim a farm laborer's lien, a woman should not also have the right to claim a farm laborer's lien therefor.  Had Magill employed a man to do the cooking on this rig, it could hardly be asserted that in law he would not have been entitled to a farm laborer's lien as security for his services rendered in procuring the threshing of the crop, under the holding in Heddan v. Walden Farmers Elevator Co. 31 N. D. 392, 153 N. W. 1015, to the same extent as the farm laborer who assisted in cutting the crop.  Lowe v. Abrahamson merely holds that a woman doing ordinary housework on a farm is not a farm laborer within the meaning of the statute granting a lien for the wages of farm laborers.  Certainly, the case should not be applied to facts such as are before us, because to do so would be the equivalent of denying a lien to a woman while under the same facts it would be granted to a man for the same work.  The right to a lien does not, and should not, depend upon the sex of the individual who performed the work.  If any person working upon this threshing rig was entitled to a lien, this plaintiff was.  Her work contributed directly, not remotely, to the garnering of the crop raised upon this land, in feed-

ing the men who were threshing. In equity and good conscience she was entitled to a lien for, as well as to, her wages from defendant Magill, who should not be permitted to shift and juggle responsibility for, while enjoying the proceeds of, plaintiff's labor.

This holding but follows Lowe v. Abrahamson, supra. That decision carefully sets forth testimony to establish "the character of the work performed," quoting the opinion. It carefully distinguished that holding on facts from Winslow v. Urquhart, 39 Wis. 260, and Breault v. Archambault, 64 Minn. 420, 58 Am. St. Rep. 547, 67 N. W. 348, cited therein, wherein cooks for logging camps were held entitled to a lumberman's lien upon logs for services performed as lumbermen. In Lowe v. Abrahamson it is said: "In these cases [the logging crew cases] the cooks went into the logging camps as members of logging crews and did no other work except to cook for them. In this case the plaintiff did other work besides cooking, and cooked for others than the farm laborers." 18 N. D. p. 185. This plaintiff was, as in the logging cases, a member of the crew, doing no work but cooking for the crew. Engaged in farm labor only at threshing. Under the interpretation of Lowe v. Abrahamson, given in that opinion, that court would have held plaintiff entitled to a lien. If a cook at a lumber camp is entitled to a lien as a lumberman, a cook at a farm laborer's camp or cook car is likewise entitled to a farm laborer's lien as a farm laborer. See also Young v. French, 35 Wis. 111, holding, as interpreted in 39 Wis. 268: "One who cooks for the men at work on the logs directly is entitled to a lien thereon for his wages under the statute. . . . It seems to us that the person who cooks the food for the men who fall the trees and work directly and immediately upon the logs or timber performs service in the cutting, falling, driving, etc., such logs or timber within the meaning of the statute equally with those who use the ax, the saw, or the team to the same end. . . . The statute under consideration was enacted in the interests of labor, and a sound public policy requires that it be liberally construed. The construction contended for on behalf of the plaintiffs is too narrow, and, if adopted, would go far to defeat the objects and purposes of the statute." Winslow v. Urquhart, 39 Wis. 260–268. Our statute is also remedial and to protect the laborer, male or female, coming within its letter and spirit. In 64 Minn. 420, it is said: "It is evident that a cook or a blacksmith is as essential

to a logging crew as is the man who swings an ax or drives a team, and it is also evident that both perform manual labor. If the ax man or the teamster was compelled to leave his work and spend two hours of each day in preparing his own food, or in shoeing his horses, or repairing his sled or tools, would it be suggested that his time while so engaged should be deducted from his day's work, and a lien allowed for the balance only? We believe that no one would think of asserting such a proposition. And, if this be so, why should a person who renders these services, but performs no other, be declared outside of the statute, and thus deprived of a lien?" Our statute § 6857, Comp. Laws 1913, reads: "Any person who performs services for another in the capacity of a farm laborer . . . shall have a lien," etc. Plaintiff was working "in the capacity of a farm laborer."

But, to avoid any misunderstanding of or misapplication of this hold-ing as precedent, it may be stated that a cook on a cook car for the ordinary thresher has no farm laborer's lien upon the grain threshed for others by said thresher, as the cook would not be considered as a farm laborer, but a laborer for the thresher, who as thresher is not a farm laborer under this statute, but one who instead has a thresher's lien for his protection. Nor would an ordinary housemaid or hired girl who, with her other duties, cooks for a threshing crew working for her employer, be a farm laborer within the lien statute. Lowe v. Abra-hamson, 18 N. D. 182, 19 L.R.A.(N.S.) 1039, 119 N. W. 241, 20 Ann. Cas. 355. But a farmer owning and operating his own threshing machine may, in doing his own threshing, employ farm laborers who may, for said threshing, claim farm laborers' liens upon the grain threshed while working for the farmer as farm hands at threshing his own grain. Heddan v. Walden Farmers Elevator Co. 31 N. D. 392, 153 N. W. 1015. And the person employed solely to cook for said laborers so engaged in threshing should be considered as a farm laborer and as contributing directly to, and performing, the labor of garnering the grain. The cook is as much a farm laborer as the spike pitcher on the threshing rig, threshing it. In Heddan v. Walden Farmers Elevator Co. supra, it is stated: "The flax could neither be harvested nor threshed except by the use of machinery, and certainly the mere fact that part of plaintiff's work consisted in aiding in the operation of machinery owned and operated by the employer did not deprive plaintiff of the

character of a farm laborer." If this cook working for this farmer on the employer's own farm, assisting in threshing the employer's own grain, is not working as farm laborer, then the water boy carrying water for a crew of farm laborers is not a farm laborer. Both are farm laborers within the meaning of our lien statute.

In some of the cases, as, for instance, McCormick v. Los Angeles City Water Co. 40 Cal. 185, it is argued that if a cook is entitled to a lien, those furnishing provisions to eat would be entitled to one also under similar reasoning. But this overlooks the fact that under the terms of this statute the lien is given for farm labor performed, and not for provender furnished. Likewise, a surgeon performing services for a farm laborer is doing the work of a surgeon, not that of a farm laborer. No need of confusing the question before us by such conclusions as drawn in 40 Cal. 185.

The judgment appealed from should be reversed and a judgment entered in favor of plaintiff and against defendant for the sum of $106.-50 and interest from and after October 6, 1915, together with judgment for foreclosure of the laborer's lien upon the crop threshed, together with the costs in District Court and on this appeal.

Judgment is ordered entered accordingly.

Bruce, J. (dissenting). I am inclined to think that if the plaintiff had been employed by the defendant Magill to perform the work in question, she would have come under the statutory definition of a farm laborer. I do not believe, however, that the record warrants us in holding that she was working for him. The complaint states that "plaintiff rendered services to the defendants at the special instance and request of the defendant A. J. Kelly," and "that the defendant A. J. Kelly operated a threshing machine on the above-described premises." She claimed her lien in the complaint also "for the money so due her under her said contract upon the grains threshed by the defendant A. J. Kelly, upon lands hereinbefore described." . The evidence appears to me to support the complaint and to show an employment by Kelly and work done for him rather than for Magill. As I view the case, it is immaterial when the title in the machine passed or whether it passed at all. If it passed prior to the entering upon the work, the plaintiff was none the less employed by Kelly rather than by Magill, and Kelly had merely

been paid for his work in advance. If it was to pass after the completion of the work, the payment had merely been deferred and it would make no difference as to the employment of the plaintiff.

CHRISTIANSON, J. (dissenting). I am unable to concur in the opinion prepared by my brother Goss.

The material portions of plaintiff's cause of action, as stated in her complaint, are as follows: "That from the 1st day of September, 1915, to the 6th day of October, 1915, both inclusive, this plaintiff rendered services to the defendants, at the special instance and request of the defendant A. J. Kelly, in the capacity of a farm laborer, . . . that said lands above-mentioned are owned by the defendant Roland Magill, and that said Roland Magill sowed, grew, harvested, and threshed on the above-described lands, during the season of 1915, wheat and oats, the amount of which is unknown to this plaintiff; . . . that the defendant A. J. Kelly operated a threshing machine on the above described premises and threshed grain; namely, wheat and oats grown and harvested thereon. That on the 23d day of October, 1915, this plaintiff, for the purpose of securing and perfecting a lien for the money so due her as aforesaid under her said contract, upon the grains threshed by the defendant A. J. Kelly upon the lands hereinbefore described, . . . filed in the office of the register of deeds . . . a farm laborer's lien." The evidence shows that the services performed by plaintiff consisted solely of cooking meals for the threshing crew engaged by Kelly and operating his machine.

Under the laws of this state (Comp. Laws 1913, § 6857) "any person who performs services for another in the capacity of farm laborer between the first day of April and the first day of December in any year," may, by filing an affidavit and notice, obtain "a lien on all crops of every kind grown, raised or harvested by the person for whom the services were performed during said time as security for the payment of any wages due or owing to such persons for services so performed."

"The statute" (providing for the farm laborer's lien), said Morgan, Ch. J. (Lowe v. Abrahamson, 18 N. D. 182, 19 L.R.A.(N.S.) 1039, 119 N. W. 241, 20 Ann. Cas. 355), "was passed to secure farm laborers against irresponsible landlords, and against the liens of implement dealers, which often covered the whole crop. We must look to the terms

of the statute to ascertain who are entitled to avail themselves of its provisions. It should be liberally construed to give effect to the intent of the legislature in enacting it. Its provisions should not be restricted or added to, as it is the sole function of the legislature to say to whom this special lien shall be given. . . . *As ordinarily understood, a farm laborer is one who labors upon a farm in raising crops, or doing general farm work. As commonly accepted, we think the words do not include those engaged in domestic work. They refer to work performed directly in connection with the crops raised on the farm.* Under the evidence, it appears that the plaintiff did no work except in the house. She did the cooking for four or five men who were working on the farm for Abrahamson, and for two other men who were working for Casey. It does not appear that the persons working for Casey did any work for Abrahamson, or in connection with the crop on the farm. . . . *We do not think that the work done by plaintiff can be classed as farm labor within the meaning of the Lien Law.* Although the statute is to be liberally construed to secure a lien in favor of persons who have labored upon the farm, *we are satisfied that it was not intended to include those within its provisions whose work was only indirectly connected with the crop.*"

If a person whose principal labor consists of preparing meals for the men laboring upon a farm is not a farm laborer, then, certainly, a cook for a threshing crew is not. It seems to me that the term "farm laborer" merely means what is commonly understood thereby, and as so understood it means a person engaged in performing farm work proper. The term does not include a person who performs services for a farm laborer, and thereby indirectly aids in the production of the crop. When we speak of a farm laborer, would anyone believe that we referred to a person whose sole labor consisted of cooking for a threshing crew engaged in general threshing? I think not.

It seems to me that the conclusion arrived at by the majority is contrary to, and in effect overrules, Lowe v. Abrahamson, supra, and I am opposed to overruling decisions announcing rules of statutory construction, as it tends towards chaos and uncertainty. If the statute as construed by the court is unsatisfactory, the legislature can very easily change it. If the legislature fails to act, the people may by initiative petition propose any desired change.

The farm laborer's lien can be claimed only for services performed by the person claiming the lien. It does not inure to the benefit of a person who employs others to do the work; he will be considered a contractor, and not a farm laborer. 2 C. J. 1009.

Under our laws the owner or lessee of a threshing machine who threshes grain for another becomes entitled to a lien on the grain threshed for the amount of the thresh bill. This lien has priority over all other liens or encumbrances. Comp. Laws 1913, §§ 6854–6856. The lien to which the thresher is entitled necessarily includes the services of the various persons who work for him in and about the operation of the threshing machine, and certainly a person engaged by the owner or lessee of a threshing machine does not become entitled to a farm laborer's lien upon the grains threshed by such threshing machine. The law contemplates that a farm laborer (and the term "farm laborer" merely means what is commonly understood thereby), upon complying with the statutory provisions, becomes entitled to a lien for his services. Persons engaged by the owner or operator of a threshing machine must look to their employer for payment, and he has a right to obtain a threshing lien for the sums due him for threshing, but the persons in his employment must look to him alone for their pay, and have no right to claim a lien against the grain threshed. They are not farm laborers within the purview of the statute; nor are they employed by the owner of the crop to perform such service. It is true that in Heddan v. Walden Farmers Elevator Co. 31 N. D. 392, 153 N. W. 1015 (wherein the opinion was written by the writer), we held that where the farmer owns and operates his own threshing machine, and where the men engaged by him perform work under his direction in the threshing and marketing of the grain, they are farm laborers within the meaning of the statute and entitled to its protection. In the Heddan Case the employer owned and operated a small threshing machine of his own, with which he threshed his own grain. His farm hands performed work on the machine. The evidence showed that Heddan not only performed labor in threshing, but that prior thereto he performed labor in harvesting the grain involved in that case. The work which Heddan performed was not for a thresher engaged in general threshing, but it was labor performed under an agreement with the farmer who produced the crop, and under his direction. But in a case where a person is employed

to perform labor for a person engaged in general threshing, he is not a farm laborer, and has no right to claim a farm laborer's lien upon grains threshed, but he must look to his employer (the thresher) for payment for his services. Heddan was a farm laborer employed by the farmer, and under his direction he performed labor directly connected with the production of the crop. The plaintiff in the case at bar was employed to perform services as a cook for a threshing crew, and she was not a farm laborer within the purview of the statute as that statute was construed by this court in Lowe v. Abrahamson, 18 N. D. 182, 19 L.R.A.(N.S.) 1039, 119 N. W. 241, 20 Ann. Cas. 355.