LESLIE OLIPHANT, Appellee, v. THEO. W. HAWKINSON, Executor, Appellant.

**MASTER AND SERVANT:** Workmen's Compensation Act—Casual
1  Employment. The construction by a carpenter of a corncrib on the leased farm of a retired farmer, under contract with the latter, is

a "purely casual employment," within the meaning of the Work-men's Compensation Act. (Secs. 2477-m and 2477-m16, Code Supp., 1913.)

WEAVER and PRESTON, JJ., dissent.

**STATUTES:** Construction—Within Letter But Beyond Intent. Prin-
2 ciple reaffirmed that a thing which is within the *letter* of a statute is, nevertheless, not within the statute if it is *not within the intention* of the statute.

**MASTER AND SERVANT:** Workmen's Compensation Act—"Em-
3 ployer's Trade or Business." A retired farmer who has no occupation, business, or calling, beyond renting his farm, is not engaged in an "industrial employment for pecuniary gain," within the meaning of the Workmen's Compensation Act, and his employment of a carpenter to erect a corncrib on said farm is not "for the employer's trade or business," within the meaning of said act. (Sec. 2477-m16, Code Supp., 1913.)

WEAVER and PRESTON, JJ., dissent.

*Appeal from Linn District Court.*—F. F. DAWLEY, Judge.

JUNE 25, 1921.

REHEARING DENIED JANUARY 20, 1922.

ACTION for compensation under the Workmen's Compensation Act. The industrial commissioner and the district court held that the appellee was entitled to compensation, under the provisions of said act. The executor of the estate of the employer, now deceased, appeals from such finding.—*Reversed.*

*Voris & Haas* and *A. W. Fisher,* for appellant.

*Johnson, Donnelly & Swab,* for appellee.

FAVILLE, J.—The facts in this case are without any substantial dispute in the record. One Jacob Wachal was a retired farmer, living in the town of Walker, Linn County, Iowa. He owned a farm, situated about two miles from said town, which he leased to a tenant, who occupied and operated the same. Some time prior to the accident in question, Wachal entered into an agreement with the tenant to tear down an old corncrib then

1. MASTER AND SERVANT: Workmen's Compensation Act: casual employment.

located on the farm and build a new one in its place, and in pursuance of such arrangement, tore down the old corncrib and put in a cement foundation for a new one. On or about the 25th day of July, 1916, Wachal employed the appellee and three other men, all of whom were carpenters, to go to the farm and build the new corncrib. He hired each of said men by the hour, and arranged for taking them to the farm in an automobile, to do the work. The men were taken out, and commenced the operation of building the new crib. They had been so employed about an hour and a half, when the appellee, who was engaged in measuring some work on the foundation, came behind a fellow workman, who was drawing a nail with a pinch-bar; and the end of the bar flew back, striking the appellee in the right eye, destroying the sight. It is for this injury that compensation is claimed.

The remaining employees completed the work of building the corncrib in about five or six days. The appellee made proper application, as provided by statute, for compensation under the Workmen's Compensation Act, and was awarded compensation by the industrial commissioner; and, on appeal to the district court of Linn County, Iowa, the action awarding such compensation was affirmed.

Since said time, the said Wachal has died, and the appellant, as executor of his estate, has been substituted in the case.

The question for our determination is whether or not, on said state of facts, the appellee is entitled to compensation under the Workmen's Compensation Act, as it existed at the time of the injury.

I. Section 2477-m of the Code Supplement, 1913, provides as follows:

"(a) Except as by this act otherwise provided, it shall be conclusively presumed that every employer as defined by this act has elected to provide, secure and pay compensation according to the terms, conditions, and provisions of this act for any and all personal injuries sustained by an employee arising out of and in the course of the employment; and in such cases the employer shall be relieved from other liability for recovery of damages or other compensation for such per-

sonal injury, unless by the terms of this act otherwise provided; but this act shall not apply to any household or domestic servant, farm or other laborer engaged in agricultural pursuits, nor persons whose employment is of a casual nature."

Section 2477-m16, Code Supplement, 1913, Paragraph b, provides as follows:

" 'Workman' is used synonymously with 'employee,' and means any person who has entered into the employment of, or works under contract of service, express or implied, or apprenticeship for an employer, except a person whose employment is purely casual and not for the purpose of the employer's trade or business or those engaged in clerical work only, * * *''

At the outset, it is well to notice that this statute has been materially changed by Section 10 of Chapter 270, Acts of the Thirty-seventh General Assembly. By said act, the word "and" in said Section 2477-m16, Paragraph b, is changed to the word "or," and as the law now stands, this paragraph excepts from the provisions of the act persons whose employment is "purely casual" *or* whose employment is "not for the purpose of the employer's trade or business."

We had occasion to discuss this change in the statute in the recent case of *Herbig v. Walton Auto Co.*, 191 Iowa 394. The instant case arose, however, before the amendment to the statute, and we were compelled to consider it in the light of the statute as originally enacted.

It will be observed that Section 2477-m provides that the act "shall not apply to persons whose employment is of a casual nature." And Section 2477-m16, in defining who is a workman, excepts from the provisions of the statute a "person whose employment is purely casual and not for the purpose of the employer's trade or business." So we have the situation that, under Section 2477-m, *all* persons "whose employment is of a casual nature" are excepted from the provisions of the act. Under Section 2477-m16, Paragraph b, there is excepted from the definition of a workman "a person whose employment is purely casual *and* not for the purpose of the employer's trade or business." The two sections must be read together, in order to arrive at the intention of the legislature in enacting the statute. Standing alone, the first section exempts from the provisions of

the statute *any* person whose employment is casual. Section 2477-m16, as originally enacted, places an apparent limitation upon the provisions of Section 2477-m, in providing that the workman, to be outside the act, shall not only be one whose employment is purely casual, but also one whose employment is not for the purpose of the employer's trade or business. Under the latter section, as originally enacted, and as applicable to this case, it is evident that, in order that the act shall not apply, the "workman" must be one "whose employment is purely casual" and also one whose employment is not "for the purpose of the employer's trade or business."

In considering this case, we shall regard it as coming under Section 2477-m16, as originally enacted, and must squarely meet the question: "Was the appellee a person whose employment was 'purely casual' *and* 'not for the purpose of the employer's trade or business?'" If he was, then he was not entitled to compensation under the act. If he was not, then he was entitled to compensation, and the award made was correct.

II.   In *Uphoff v. Industrial Board*, 271 Ill. 312 (111 N. E. 128), the Supreme Court of Illinois construed the Workmen's Compensation Law of that state, in a case where a landowner

2. STATUTES: construction: within letter but beyond intent.

employed a party to help build a broom-corn shed on his farm. The employee, while working on the building, was injured by a piece of metal which flew from a hammer he was using, and struck him in the eye. The court said:

"The intention of the lawmakers is the law. This intention is to be gathered from the necessity or reason of the enactment and the meaning of the words, enlarged or restricted according to their real intent. In construing a statute, the courts are not confined to the literal meaning of the words. A thing within the intention is regarded within the statute, though not within the letter. A thing within the letter is not within the statute, if not also within the intention. When the intention can be collected from the statute, words may be modified or altered, so as to obviate all inconsistency with such intention. (*Hoyne v. Danisch*, 264 Ill. 467.) When great inconvenience or absurd consequences will result from a particular construction, that construction should be avoided, unless the meaning of the legisla-

ture be so plain and manifest that avoidance is impossible. (*People v. Wren,* 4 Scam. 269.) The courts are bound to presume that absurd consequences leading to great injustice were not contemplated by the legislature, and a construction should be adopted that it may be reasonable to presume was contemplated. (2 Lewis' Sutherland on Stat. Const. Section 489; *People v. City of Chicago,* 152 Ill. 546; *Canal Com. v. Sanitary District,* 184 Ill. 597.) A statute is passed .as a whole, and not in parts or sections; hence each part or section should be construed in connection with every other part or section. In order to get the real intention of the legislature, attention must not be confined to the one section to be construed. (*Warner v. King,* 267 Ill. 82, and cited cases.) ''

We approve of this pronouncement. With this thought in mind, let us examine the statute in question. It is a comprehensive scheme, enacted for the benefit of both the employer and employee engaged in industrial employment. The statute, as it stood at the time this injury occurred, declares that:

'' 'Industrial employment' includes only employment in occupation, callings, businesses or pursuits which are carried on by the employer for the sake of pecuniary gain.'' Code Supplement, 1913, 2477-m16, Paragraph .h.

It also provides (Section 2477-m) that:

''This act shall not apply to any household or domestic servant, farm or other laborer engaged in agricultural pursuits.''

It also provides, Section 2477-m41, Code Supplement, 1913:

''Every employer subject to the provisions of this act shall insure his liability thereunder in some corporation, association or organization approved by the state department of insurance.''

The statute also has provisions requiring every employer subject thereto, if he does not accept the provisions of the act before ''beginning business,'' to file a notice with the Iowa Industrial Commissioner of his rejection of the terms, conditions, and provisions of the act, and requiring that the employer shall keep a copy of such notice posted in some conspicuous place ''at the place where the business is carried on.'' By amendment to the statute, an employer who fails to insure his

liability is made subject to indictment if he fails to post and to keep posted in the immediate vicinity of the place where his employees are working, a notice of such failure to insure. See Acts of the Thirty-seventh General Assembly, Chapter 270, Section 20.

The evident purpose of the legislature in the enactment of this statute was to apply it to "industrial employment," to "occupations, callings, businesses, and pursuits carried on for the sake of pecuniary gain." It was intended obviously to apply to cases where employers in industrial pursuits, outside of those excepted in the statute, carried on a business for pecuniary gain, and engaged employees to work for them in the prosecution of such business.

By the very terms of the act, those whose employment in such business was "casual" did not come under its provisions. It was clearly the intention of the legislature that, where an employer engaged some employee whose services were "purely casual," he should not be required to take out insurance to cover such employee while engaged in such casual service, or to post notices of the rejection of the act, if he did reject it.

What is casual employment, within the meaning of this act, must be determined by the facts of each particular case. We have had occasion to pass upon this question and to review the authorities in *Bedard v. Sweinhart*, 186 Iowa 655; *Herbig v. Walton Auto Co.*, supra, and *Porter v. Mapleton Elec. Light Co.*, 191 Iowa 1031. Following these decisions, under the facts in this case, we hold that the employment of the appellee to assist in the building of a corncrib on the farm owned by Wachal was of a casual nature, within the meaning of this statute.

III.   As before stated, under Section 2477-m16 it is contended that, before the workman is excluded from the provisions of the act, it must appear, not only that his employment was casual, but *also* that it was not for the purpose of the employer's trade or business. It may be conceded that the original statute should be so construed. It does not necessarily follow, however, that, under the facts of this case, the employment of the appellee was "for the purpose of the employer's trade or business," within the meaning of this statute. What "trade or

3. MASTER AND SERVANT: Workmen's Compensation Act: "employer's trade or business."

business," what "occupation, calling, business, or pursuit," was carried on by the employer for the sake of pecuniary gain, that brought this employee within the provisions of this act? Wachal was a retired farmer, living in a little town. So far as the record shows, he was engaged in no active occupation, calling, business, or pursuit. He belonged to that large class that has been produced somewhat prolifically in Iowa, known as "retired farmers." He owned a farm near the town in which he lived, which he rented to a tenant for a term of years. The tenant was in possession under a written lease, with the usual rights of a tenant. Whether or not Wachal collected his own rents or had someone do it for him does not appear from the record. His rights in and about the farm were only those which a landlord has with a tenant in possession. He had agreed with this tenant that he would have an old corncrib on the farm torn down and a new one built in its place. The record is not just clear as to who had torn down the old crib, but in any event the appellee had had nothing to do with it. Wachal hired the appellee, with three others, to go out to the farm and erect the new crib, a job which was completed by three men in five or six days.

The situation is neither unusual nor exceptional, within this state. We cannot be unmindful of the fact that there are few, if any, cities or towns of this state that do not disclose in repeated instances the same kind of situation that is evidenced here. Numerous "retired farmers" live in the cities and towns of Iowa, and own land which they lease to tenants who are in possession thereof. Such owners frequently employ different persons, from time to time, to make needed repairs or improvements on their farms. If this statute applies to all such cases, then such a landowner could not hire a man to mend a fence, to fix a gate, to repair a pump, to restore shingles on a roof, to patch up a chimney, or to do any one of the numerous things that are necessary and are constantly being done, to keep up premises so owned, without being under the necessity of taking out an insurance policy every time a man is hired to do such work; or else such owner would be compelled to post a notice, in a conspicuous place near the work, of the rejection of the Workmen's Compensation Act, and to serve such notice on the

industrial commissioner at Des Moines; and, under the statute as it now stands, he would be guilty of a misdemeanor for failure so to do.

We do not believe that the legislature of Iowa ever intended that this act should be construed in any such way, or that its terms were ever intended to include any such employment as being "industrial employment for pecuniary gain."

Wachal's "business" was not that of house building. He was not carrying on any such occupation, calling, business, or pursuit for pecuniary gain. Under the very language of the statute, this employment of appellee was not "for the purpose of the employer's trade or business." Wachal had no trade or business, within the meaning of this act. The fact that he owned a farm and leased it did not bring him within the class contemplated by this statute as "an employer." He was not engaged in any "industrial employment for pecuniary gain," within the purview of this statute.

It is undoubtedly true that a man may have more than one business or occupation. He may come under this statute in one instance and not in another; but we are not prepared to hold that a retired farmer, living in town and leasing his farm, is engaged in "an industrial business," as contemplated by this act, because he hires three or four men to build a corncrib on his rented farm, and that he must, before doing so, take out an insurance policy, and otherwise comply with the terms and provisions of the Workmen's Compensation Act. We hold that such a construction and application of the law were never intended by the legislature. We are not without support for this conclusion in the authorities.

In *State v. District Court*, 138 Minn. 103 (164 N. W. 366), the Supreme Court of Minnesota considered a somewhat similar case. In that case, the defendant owned a farm near the village of Osakis, which he rented to a tenant. The defendant lived in the village, where he dealt in horses and did some auto livery and other business on a small scale. The barn on his farm was destroyed by fire. He employed the relator in the case and four other men to erect a temporary shed on the farm, and took them to the place. While engaged in the work, the relator was hit in the eye by a nail, and injured. It was claimed that the

work came within the business, trade, profession, or occupation of the defendant, and was, therefore, covered by the Workmen's Compensation Statute of that state, although it was casual in character. It was argued that it was part of the defendant's business as a landlord to erect or repair the necessary structures on the farm. The statute was similar to our statute as it was at the time this cause of action originated, in providing that the statute should not apply to those whose employment was casual *and* not in the usual course of the trade, business, profession, or occupation of the employer. It will be noticed that, under the Minnesota statute, the phrases are conjunctive. The court said:

"Assuming that the lease obligated defendant to erect a shelter for his tenant's stock, or that he had voluntarily agreed so to do, we may say, in a certain sense, that the erection became his business or duty. But that cannot be the meaning of the word 'business' in this statute. It must have the same general significance with respect to the work or calling of the employer as the words 'trade, profession, or occupation;' hence must refer to the employer's ordinary vocation, and not to every occasional, incidental, or insignificant work he may have to do. When we speak of a person's trade or profession, we generally refer to that branch of the world's activities wherein, he expends his usual everyday efforts to gain a livelihood. There is no evidence that defendant made it a part of his calling to rent out farms or erect buildings, either temporary structures or permanent. For all that appears, this was the only farm he owned, and it may have been of such small area and value that its renting and care could not properly be classified either as a business or occupation. And certainly neither the renting of the farm nor the construction of this shed can be referred to as coming within the 'usual course' of defendant's business or occupation."

The language is pertinent to the instant case. It is true that the Minnesota statute (General Statutes, 1913, Section 8202) provides that it shall not apply to those whose employment is not in the "*usual course* of the trade, business, profession, or occupation of its employer," and that our statute follows the language of the English act, omitting the words "usual

course." Commenting on this phase, the Supreme Court of Minnesota says:

"Even the English act has been so construed that the facts of this case would not warrant compensation. It is said to afford compensation for injuries received only in the normal operations which form the part of the ordinary business carried on, and not to include incidental and occasional operations having for their purpose the preservation of the premises and appliances used in the business. *Hayes v. S. J. Thompson Co.,* 6 B. W. C. C. 130; *Rennie v. Reed,* 1 B. W. C. C. 324; *Pearce v. London & S. W. R. Co.,* 82 L. T. R. 487; *Bargewell v. Daniel,* 98 L. T. R. 257; *Kelly v. Buchanan,* 47 Ir. L. T. R. 228; *Alderman v. Warren,* 9 B. W. C. C. 507."

Under the English decisions construing a statute similar to ours, the act would not apply to a case like the one at bar.

In *Bargewell v. Daniel,* 98 L. T. R. 257, the court considered the case of a workman who earned his living doing repair work. The defendant, Daniel, owned certain cottages, which were leased to tenants. She collected her own rent, made her own repairs, and had no other business or occupation. She hired the complainant to make repairs on one of her cottages; and while so employed, he was injured. The Master of the Rolls said:

"Therefore, the plaintiff was not a workman, within the act, unless he was employed for the purposes of the employer's trade or business. It is not suggested the defendant was carrying on a trade. Was she carrying on a business in which the plaintiff could be employed? It seems to me she was not. * * * But Section 13 of the act provides that a workman within the act does not include a person whose employment is of a casual nature, and who is employed otherwise than for the purposes of the employer's trade or business. The intention was that the act should not apply, in such a case, to the ordinary owner of property, who was not carrying on any trade or business."

In *Kelly v. Buchanan,* 47 Ir. L. T. R. 228, decided under the English act, the defendant was a shopkeeper, who owned certain dwellings adjoining his place of business, which dwellings he rented to tenants. He hired the plaintiff to do some work on one of these buildings, and while so engaged, plaintiff was injured. The court said:

"The facts are very plain. Here we have a man who carries on the business of a shopkeeper in a house, and at the back there are some houses, converted from cow houses into residences; he brings in a man to repair one of them, and we are asked to say that this casual laborer was employed for the purposes of the employer's trade or business. The decision of the county court judge was wrong, and we must allow the appeal."

In *Uphoff v. Industrial Board,* supra, a landowner employed the complainant to help build a broom-corn shed on the former's farm. While so doing, he was injured. The Workmen's Compensation Act of Illinois applies to "an employer engaged in any of the following occupations, enterprises, or businesses, namely: 1. The building, maintaining, repairing, or demolishing of any structure." The Supreme Court said:

"It is contended by counsel for defendants in error that plaintiff in error must be held to come under the provisions of the act, under Subdivision 1 of Paragraph (b) of Section 3, as the broom-corn shed would be included in the provisions of that section, in the building 'of any structure.' This could only be true if it were held that, in so building such broom-corn shed, the farmer was engaged in an occupation, enterprise, or business, and was engaged in the usual course of his 'trade, business, profession, or occupation,' and that the employment was not casual."

It was held that there was no liability, under the statute.

In *Holbrook v. Olympia Hotel Co.,* 200 Mich. 597 (166 N. W. 876), the owner of a hotel caused the rooms to be painted and decorated, from time to time. A workman, while so engaged, was injured. The statute of Michigan provides that it shall not include "any person whose employment is but casual, or not in the usual course of the trade, business, profession, or occupation of his employer." The Supreme Court of that state said:

"It is clear that the law contemplates that there may be an employment of labor, not in the usual course of the business of the employer, in which employment the risks of injury not occasioned by the employer's fault are assumed by the workman. It would seem that occasionally renovating the rooms of a building, or the building itself, owned and occupied by the

owner as a home, with paint or paper or both, is not in the usual course of the trade, business, profession, or occupation of the owner, unless he is himself in the business of painting and decorating. No reason can be found for concluding that the owner of a hotel is pursuing his business, within the meaning of the law, when he causes the rooms to be occasionally painted and decorated, although it is usual to have work of that nature done from time to time.''

In *Packett v. Moretown Creamery Co.*, 91 Vt. 97 (99 Atl. 638), a creamery company employed a contractor and builder to erect a new creamery building. In construing the statute of Vermont, the Supreme Court of that state said:

''The true test is, Did the work being done pertain to the business, trade, or occupation of the creamery company, carried on by it for pecuniary gain? If so, the fact that it was being done through the medium of an independent contractor would not relieve the company from liability. The finding of the board is that the creamery company, at the time of the injury, was engaged in the creamery business. There is nothing to show that the company was engaged in the business of erecting buildings, unless such is the effect of the fact that Flynn was erecting for it a building under a contract which made him an independent contractor, and not an employee. But such is not the reasonable interpretation of employment 'for the purpose of the employer's trade or business,' and 'in a trade or occupation * * * carried on * * * for the sake of pecuniary gain.' It would be quite as reasonable to say that Flynn was engaged in the creamery business, in contemplation of the act, as that the creamery company was engaged in the business of erecting buildings. As well say that a farmer who lets a contract to build a barn or corncrib on his premises is engaged in the business of contractor and builder, or that the business of the contractor, while thus engaged, is that of farming.''

We prefer to adopt the reasoning and conclusions of the foregoing authorities, rather than that of the Supreme Court of Wisconsin in *Holmen Creamery Assn. v. Industrial Com.*, 167 Wis. 470 (167 N. W. 808), and other similar cases decided by that court.

On this branch of the case, we hold that the appellee, at

the time of the injury, was not employed "for the purpose of the employer's trade or business," within the meaning of the Workmen's Compensation Act.

IV.   It is claimed, however, that a corncrib was a necessary adjunct to the successful operation of the farm; that the owner received "pecuniary gain" by having the same constructed; and that, therefore, causing the corncrib to be built was part of his "business." As before stated, we do not believe the legislature ever intended that any such interpretation should be placed upon this act, and we so hold. But if we should accept the construction contended for, then we are at once brought face to face with the provisions of Section 2477-m, which declares that the act "shall not apply to any household or domestic servant, farm or other laborer engaged in agricultural pursuits."

If Wachal was engaged in *any* "trade or business" at all, it was the care, upkeep, and improvement of his farm. If this is to be denominated a "business" or "pursuit," it was more nearly an "agricultural pursuit" than anything else. If the building of the corncrib was necessary for the proper conduct of the "business" of operating the farm, then it may be said with much plausibility that it was an "agricultural pursuit."

In *Sylcord v. Horn*, 179 Iowa 936, we considered this question, and held that an employee engaged in operating a corn shredder was "a farm laborer or other laborer engaged in agricultural pursuits," and within the exception of the act.

It has been held that an employee on a farm who is required to repair a tractor and is injured while so engaged is a "farm laborer," within the meaning of the Compensation Act. *Maryland Cas. Co. v. Pillsbury*, 172 Cal. 748 (158 Pac. 1031).

In *Coleman v. Bartholomew*, 175 App. Div. 122 (161 N. Y. Supp. 560), it is held that a farm hand engaged in repairing a barn is, nevertheless, a farm laborer.

An employee hired to help operate a threshing machine that was used to thresh grain for farmers generally about the country was held to be a "farm laborer," within the meaning of the Compensation Act, in *State v. District Court*, 140 Minn. 398 (168 N. W. 130).

In *Miller & Lux v. Industrial Acc. Com.*, 179 Cal. 764 (178 Pac. 960), the Supreme Court of California held that, where an

employer hired a wagon maker to work in a shop solely to repair vehicles and machinery used by the employer in his farming operations, the employee was "engaged in farm labor," within the meaning of the Workmen's Compensation Act, although he devoted his entire time to work in the wagon shop.

In *Stevenson v. Magill*, 35 N. D. 576 (160 N. W. 700), it is held that a cook for a threshing crew is a "farm laborer."

In view of our conclusion on the other features of the case, it is unnecessary that we determine the question of whether or not the appellee was "a laborer engaged in agricultural pursuits," and we do not make any pronouncement on that question, further than 'to observe that, as above indicated, there is respectable authority to sustain such a conclusion.

A dissent is filed herewith. We note the facetious manner in which the writer of the dissent has seen fit to treat this division of this opinion. Notwithstanding the jocular animadversions of the dissenter, we still modestly insist that we do no great violence to the proprieties in referring to the pronouncements of the appellate courts of California, New York, Minnesota, and North Dakota as "respectable authority." The suggestion that the majority would hold that the physician whom a farmer calls to officiate at the birth of his child, or the minister who is called to perform a marriage ceremony, is engaged in "agricultural pursuits" is a splendid example of that fine sense of humor which has so greatly endeared the writer of the dissent to the profession of this state. But our distinguished colleague has placed himself in the somewhat uncomfortable position of being "hoist on his own petard." The logical deduction from his interpretation of the statute, in his endeavor to make it all-embracing, would be that, before a so-called "employer" could summon an *accoucheur* or a clergyman, it would be necessary for him to insure his liability with the state department of insurance, or else he would be compelled, in the language of the statute, "before beginning business," to file notice with the Iowa industrial commissioner of his rejection of the terms of the act, and to keep a copy posted in some conspicuous place where the "business" is carried on. At the risk of incurring the vigorous accusation of attempting to "modify or alter" the statute, we hope to prevent such an inter-

pretation from being placed upon it. The writer of the dissent has happily designated the proper word to describe the situation into which he would lead us. It is "absurd."

We hold that the purpose or intention of the legislature in enacting the Workmen's Compensation Act was not to include within its terms and provisions such an employment as is disclosed by the record in this case. We hold that the employment of the appellee by Wachal was casual, and that it was not for the purpose of the employer's trade or business, within the meaning of the act. It therefore follows that the appellee was not entitled to compensation under the provisions of the Workmen's Compensation Act, and that the action of the industrial commissioner and the district court of Linn County, in awarding compensation, was erroneous.

The judgment appealed from must be, and the same is,— *Reversed.*

EVANS, C. J., STEVENS, ARTHUR, and DE GRAFF, JJ., concur.

WEAVER and PRESTON, JJ., dissent.

WEAVER, J. (dissenting). I cannot agree that the court's authority to construe statutes goes to the extent of reading out of the legislative language its ordinary and accepted meaning, according to general usage, or of reading into the language employed a meaning not recognized in such usage. By Paragraph II of the majority opinion, borrowing the language of the Illinois court in *Uphoff v. Industrial Board*, 271 Ill. 312, as a text for our adherence, we arrogate to ourselves the right to declare the intention of the legislature to be other than that which is expressed. In other words, it is said that we may determine for ourselves the legislative intention which is not expressed, and then "modify or alter" its words "so as to obviate all inconsistency with such intention." With that rule established, the legislative function is reduced to an idle form, and a statute as it leaves the hands of the constitutional law-making body may be treated as little more than a disarticulated skeleton of dry bones, out of which or upon which the courts may construct a body to suit its own conception, not of what the legislature does mean, but rather of what the judicial mind, in its wisdom, conceives

it ought to have meant. With this power once assumed, it is not at all strange that the Compensation Act comes through the mill of judicial revision shorn of the meaning and effect which its plain and unambiguous words carry to the average intelligent reader. I freely concede that, where the statutory language is obscure and its meaning doubtful, the court may properly apply the rules of construction, within reasonable limits; but where the words employed are clear and unambiguous, we may not rightfully impose upon them any other meaning.

To avoid, if possible, the neutralization of the statute by destructive construction, the legislature, in Code Section 2477-m16, defined the words "employer" and "workman" in the simplest and clearest terms. "Employer" is declared to include any person, firm, association, or corporation, etc., and "workman" is made "synonymous" with "employee," and means "any person who has entered into the employment of or works under contract of service, express or implied, for an employer." And the exception from the effect of this statutory definition is one "whose employment is purely casual *and* not for the purpose of the employer's trade or business." The declared scope of the statute, Code Section 2477-m16, makes it include every employer "*as defined by this act;*" and the word is, as we have seen, specifically defined in Section 2477-m16, above quoted. In equally specific terms it excluded only "the household or domestic servant, farm or other laborer *engaged in agricultural pursuits*" and "persons *whose employment* is of casual nature." By the last cited section, as it stood when this accident occurred, to exclude the plaintiff from the benefit of the act it was necessary, as the majority admit, to find both that plaintiff's employment was "purely casual" and was "not for the purpose of his employer's trade or business;" and the conclusion reached in the majority opinion is that he comes within neither of these requirements. It will be observed that the term "casual," as used in the statute referred to, has reference to the *workman* and the character of *his service,* and not to the employer, while the phrase "for the purpose of the employer's trade or business" has reference to the employer and *his* relation to the business in which the workman is employed. Now it appears in this case that the plaintiff was a carpenter, living by

his trade. In the phrase of an earlier day, he was a "journeyman" mechanic, ready to do any work in his line as it may be called for, whether it be in building construction or repairs. When so engaged in the line of his trade or business, his employment is not "casual," whether he is building a corncrib or assisting in the more ambitious enterprise of erecting a mill, a dwelling, or a bank building. To say that plaintiff, working at his regular trade in the service of another, was engaged in a "purely casual" employment is a palpable misuse of language. Can it fairly be said that, although plaintiff was employed by the defendant to do the defendant's work in the construction of a building upon the defendant's property, he was *not* thus employed for the purpose of the defendant's trade or business? The majority finds no trouble in rising to the emergency with an answer in the affirmative. To do it, we are told that the word "trade" or "business" is not to be understood in its broad, natural, and usual meaning, but must be construed as having application to "industrial business" carried on by the employer, and that Wachal, being only a farmer, renting his farm land to tenants, has no "business" in the statutory sense, and that when, for his own protection, profit, or advantage, he undertakes to improve his property by the construction or repair of improvements thereon, the labor done to that end by his employee is "not for the purpose of his business." It would seem that the very statement of the proposition carries upon its face its own sufficient refutation. The statute imposes no such limitation, and if such limitation is to be hereafter applied, it will be only because this court by its own *ipse dixit* engrafts it thereon. To exclude the plaintiff from the protection of the act, it must affirmatively appear that the labor he was employed to perform was *not* for the purpose of his employer's trade or business. About whose business *was* he engaged? To whose business or profit or advantage did the benefit of his labor inure?

The principal definition of "business" by Webster is:

"That which busies, or engages time, attention, or labor, as a principal serious concern or interest; regular occupation; work. Any particular occupation or employment habitually engaged in, esp. for livelihood or gain. That which one has to do or should do."

By the same authority, ''trade'' is:

''Occupation, employment, or activity; dealing. Any occupation or employment, pursued as a calling; business.''

In defining the word ''business,'' the Century Dictionary expressly includes the term ''business of agriculture.'' The Massachusetts court has held that a person owning and carrying on a farm is ''engaged in business.'' *Snow v. Sheldon*, 126 Mass. 332.

Who may say that the man who owns a farm to which he gives his care and attention, whether by his own personal labor or through the medium of hired servants or tenants, who attends to the upkeep and construction of the improvements and all the other constantly recurring tasks and duties which make the property contribute to his livelihood, is a man without business, or that the man whom he employs to perform or assist in the performance of such work is *not* employed for the purpose of his employer's business? I am not unaware that, in certain other states where the courts have taken an attitude of semi-hostility to Compensation Laws, this holding by the majority finds some degree of apparent support, and the benefits of such laws have been greatly narrowed; but up to a very recent date, this court has withheld its concurrence in such tendency. The unfavorable drift of judicial opinion upon the subject is by no means universal. In Wisconsin, Indiana, New Jersey, and some other jurisdictions, the courts have refused to allow the protective features of the law to be weakened or destroyed by judicial enlargement of the exceptions to its application. I sincerely regret that the majority should think it necessary now to expressly disapprove the position taken by the courts last referred to, and to cast the weight of its influence on the other side. It should not be overlooked that our Compensation Act is by no means a replica of the statute of any other state. When compared with some of those statutes, the points of difference are more numerous than the likenesses; and in trying, by construction, to force our law into the mold made use of elsewhere, we shall inevitably, to a great extent, defeat its beneficial purposes.

Before leaving this topic, I desire to call attention to a recent Minnesota case bearing on the question whether plaintiff,

in building the corncrib, was employed for the purposes of his employer's business. See *State v. District Court*, 141 Minn. 83 (169 N. W. 488). In the case referred to, the defendants were retail dealers in lumber. They were not contractors or builders, by trade or profession. Desiring to increase their business by adding thereto a stock of coal, they undertook the construction of a shed for that purpose. Plaintiff was employed to do a part of the work, in the performance of which he was injured; and he sued for compensation. The trial court, taking the view of the majority in this case on that point, held that, while his employment was not casual, it was out of the usual course of the business or occupation of the defendant, and dismissed the claim. On appeal, the judgment was reversed. The court, after stating the facts, said:

"While the defendant was not a building contractor, nor engaged in specific work of that kind, the construction of the shed in question was in furtherance of its established business, a necessary part thereof; and we discover no sufficient reason for holding that it was outside of and beyond what is customary and usual in a situation of the kind."

So in the case at bar, the corncrib was constructed in furtherance of the business of the defendant as the owner of the farm, and in promotion of his interest thereon.

I venture to prolong the dissent to speak briefly of the effect, if any, which the fact that defendant is a farmer has upon the rights of the parties. The majority refrain from a final pronouncement on that question, but clearly intimate that, if the points already discussed were not to be decided in defendant's favor, a good reason for reaching the same conclusion would have been found by the heroic plan of holding that, for the purposes of the law, the plaintiff and his fellow carpenters engaged in building a corncrib on defendant's rented farm were "engaged in agricultural pursuits," and are therefore excluded from the protection of the act. It ought not to be necessary that I challenge both the proposition and the assurance that it has the support of "respectable authority." There is no such precedent,—no such authority. The cases cited are not at all parallel, in fact or in principle. The implied approval of the absurdity of classing the work of a carpenter and builder en-

gaged in the prosecution of his trade as an "agricultural pursuit," in order to exclude him from the protection of the act, affords a happy illustration of the unrestrained lengths to which courts may go in the exercise of an assumed right to "modify and alter" the terms of a statute. The court that can see its way clear to class the work of a carpenter or other skilled artisan as an "agricultural pursuit," simply because the site of the building is on a farm, should find no serious difficulty in listing in the same category the physician whom the farmer calls to officiate at the birth of his child, and the minister of the gospel who enters the farmer's home to perform a marriage ceremony.

As illustrating the fact that the very courts cited by the majority as respectable authority for its extraordinary claims in this respect hold otherwise, I call attention to the case of *Shafter Estate Co. v. Industrial Acc. Com.*, 175 Cal. 522 (166 Pac. 24), decided by the California court, to the effect that an employee on a farm is not engaged in agricultural pursuits unless the duties he performs pertain to agriculture in fact, in the natural and proper sense of the word. In that case, the plaintiff was a gamekeeper, and it was held that he was not excluded. The same court has held that an employee holding a light to guide the night operator of a tractor engine pulling a harrow for seeding grain was not within a provision excluding those engaged in operating farm machinery. *George v. Industrial Acc. Com.*, 178 Cal. 733. Operating a silage cutter is not an excluded occupation. *Raney v. State Ind. Acc. Com.*, 85 Ore. 199 (166 Pac. 523). A laborer employed to poison squirrels on a farm or ranch is not engaged in agriculture. *Slaughter Cattle Co. v. Pastrana*, (Tex.) 217 S. W. 749. The engineer of a steam threshing machine is not engaged in agricultural employment. *Industrial Com. v. Shadowen*, 68 Colo. 69 (187 Pac. 926); *In re Boyer*, 65 Ind. App. 408 (117 N. E. 507); *White v. Loades*, 178 App. Div. 236 (164 N. Y. Supp. 1023).

It should not be overlooked that the statute nowhere attempts to exempt the farmer from all liability to all his workmen under the act. The exemption exists only as to employees engaged in "agricultural pursuits." If he has other employees, not engaged in agricultural pursuits or in service as house-

hold or domestic servants, his liability as to them is precisely the same as is the case with every other nonexempt employer.

Again, issues joined in this class of cases are at law, and the finding of the industrial commissioner and of the court below has the force and effect of a jury verdict, and is entitled to our respect. In my opinion, the case should be affirmed.

PRESTON, J., joins in this dissent.