ALFRED N. SCHULER, appellant, v. F. C. HOLMES, appellee.

No. 47958.

(Reported in 49 N.W.2d 818)

1304

NOVEMBER 13, 1951.

Uhlenhopp & Uhlenhopp and Leming & Hobson, all of Hampton, for appellant.

James E. Coonley, of Hampton, and Senneff & Bliss, of Mason City, for appellee.

HAYS, J.—This appeal presents the single question: Is claimant barred from the benefits of the Iowa Workmen's Compensation Act, under section 85.61(3a), Code of 1950? The industrial commissioner and the district court held that he was and claimant has appealed.

Section 85.61 defines various terms used in the Act.

Paragraph 3 thereof provides: "The following persons shall not be deemed 'workmen' or 'employees': a. A person whose employment is purely casual *and* not for the purpose of the employer's trade or business." (Italics ours.) In construing this provision we are definitely committed to the rule that for one to be barred the employment must be *both* casual and not for the purpose of the employer's trade or business. Oliphant v. Hawkinson, 192 Iowa 1259, 183 N.W. 805, 33 A.L.R. 1433; Gardner v. Trustees of M. E. Church, 217 Iowa 1390, 250 N.W. 740; Bates v. Nelson, 240 Iowa 926, 38 N.W.2d 631.

In Porter v. Mapleton Electric Light Co., 191 Iowa 1031, 1033, 183 N.W. 803, 805, we said in defining the word "casual" as used in the Act:

"It is quite evident that the legislature intended a well-defined meaning of the word 'casual', and that that meaning is its ordinary signification. This word is in common use, and its meaning is well understood. What is that meaning? It is: Occasional; incidental; happening at uncertain times; not stated or regular. Its antonyms are: Regular; systematic; periodic and certain."

This case is cited with approval in Bates v. Nelson, supra. 58 Am. Jur., Workmen's Compensation, section 92, states: "In the absence of such statutory definition, the definition is that given by lexicographers." The terms "business" and "trade" are synonymous and defined in Webster's New International Dictionary, Second Edition, as "any particular occupation or employment habitually engaged in *.* *."

In construing a statute it is also a well-recognized rule that in endeavoring to ascertain the intent of the Act which is passed it should be given such construction as will not result in injustice, unreasonableness or absurd consequences. Case v. Olson, 234 Iowa 869, 14 N.W.2d 717, citing Oliphant v. Hawkinson, supra.

Under section 86.29, Code of 1950, and many decisions of this court, the findings of the industrial commissioner on a disputed fact question have the force of a jury verdict and are conclusive upon this court. However, if there is no substantial conflict therein the question becomes one of law for the court

and his findings may be reviewed. Tepesch v. Johnson, 230 Iowa 37, 296 N.W. 740; Arnold v. State, 233 Iowa 1, 6 N.W.2d 113; Brewer v. Central Constr. Co., 241 Iowa 799, 43 N.W.2d 131.

The facts in the instant case are not in substantial conflict. Claimant is a day laborer, a sort of "Jack-of-all-trades." To take his own statement:

"I did carpenter work and just general jobs, whatever jobs I would get around town. * * * Also did plumbing work, pipe fitting and that sort of thing. Dug ditches, wheeled concrete and whatever work came along. I worked by the hour. Worked for whoever wanted me and needed a man by the hour."

Defendant-employer is sixty-three years of age. Prior to 1946 he owned and operated a restaurant, which he leased in 1946. Two years later the restaurant building was destroyed by an explosion and he lived in a trailer located on the premises thereof, which he owned. He had no other property. In May 1949 he obtained possession of the property in question, two lots, on which stood the house here involved, and a small shack which he had purchased in the fall of 1948. He immediately started to modernize the house for the purpose of living in part thereof and renting a part. About three weeks before the incident in question he employed claimant to make some repairs on the garage, which was attached to the house. He also arranged with claimant to do the work incidental to connecting the house with the main sewer. On July 13, 1949, one Baldwin, using a ditching machine, dug the ditch from the sewer main to the house, both claimant and defendant being about and assisting therewith. Claimant left, intending to return the next day to complete making the connections, but fearing rain and a possible cave-in of the ditch returned that evening and commenced the work. While so engaged the ditch caved and claimant was injured. It appears without dispute that defendant had never looked after rental properties or engaged in construction work, other than above-noted, and owned no other property at the time. Claimant was employed on an hourly basis, with no definite agreement as to the amount per hour. He also furnished the material needed to make the connections:

Claimant places considerable stress upon Gardner v. Trustees of M. E. Church, supra, as authority for the proposition that the defendant's business or trade was the repair of the house. In the Gardner case the trustees were supervising the erection of a church building and Gardner was employed to help with the excavation. While it is true that it is there said that the work of building the church constituted a business or trade, the factual situation is entirely different from the instant case, and the real holding of the case was that the employment of Gardner was not "casual" but regular; that it was immaterial whether it was or was not for the purpose of the employer's business or trade.

We entertain no doubt but that under the adopted definition of "casual", as above-stated, this record shows a clear example of casual employment. We also are satisfied that the work of modernizing the house owned by defendant for the purpose of making it his home, in part, and of rental value, in part, was not a "business" or "trade" within the purview of section 85.61(3a). In fact, defendant had no business or trade. He was retired. He had withdrawn from active duty or business.

Oliphant v. Hawkinson, 192 Iowa 1259, 183 N.W. 805, 33 A.L.R. 1433, supra, is very much in point. There it was held that a retired farmer, who employed three or four men to erect a corncrib on his farm, which he rented, was not engaged in a "business" or "trade" within the meaning of the Workmen's Compensation Act. Some of the language used therein seems very apropos to the instant case. At page 1267 of 192 Iowa, page 809 of 183 N.W. it is said:

"It is undoubtedly true that a man may have more than one business or occupation. He may come under this statute in one instance and not in another; but we are not prepared to hold that a retired farmer, living in town and leasing his farm, is engaged in 'an industrial business,' as contemplated by this Act, because he hires three or four men to build a corncrib on his rented farm." Again at page 1266 of 192 Iowa, page 808 of 183 N.W.:

"Such owners frequently employ different persons, from time to time, to make needed repairs or improvements on their farms.

1308

If this statute applies to all such cases, then such a landowner could not hire a man to mend a fence, to fix a gate, to repair a pump, to restore shingles on a roof, to patch up a chimney, or to do any one of the numerous things that are necessary and are constantly being done, to keep up premises so owned, without being under the necessity of taking out an insurance policy every time a man is so hired to do such work."

To so hold would lead to unjust, unreasonable and absurd consequences.

We hold that claimant's employment was purely casual and not for the purpose of defendant's business or trade; that he is barred from the benefits of the Workmen's Compensation Act, under section 85.61(3a), and that the judgment of the trial court is correct and should be affirmed.—Affirmed.

OLIVER, C. J., and GARFIELD, WENNERSTRUM, MULRONEY, SMITH, and THOMPSON, JJ., concur.

BLISS, J., takes no part.