CANAL COMRS. *v.* SANITARY DISTRICT OF CHICAGO *et al.*

and

PEOPLE *ex rel.* Chiperfield, State's Attorney, *v.* SAME.

*Opinion filed February 19, 1900—Rehearing denied April 17, 1900.*

1. STATUTES—*words "may" and "shall" may be interchanged in ascertaining legislative intention.*   The words "may" and "shall," when used in a statute, may be read interchangeably, as will best express the legislative intention.

2. SAME—*it is permissible in construing a statute to transpose words and sentences.*   In construing a statute it is permissible to transpose words and sentences, if by doing so the legislative intention can be better determined.

3. CANALS—*section 23 of act creating sanitary district construed.*   Section 23 of the Sanitary District act, (Laws of 1889, p. 135,) providing that the district *shall* remove the dams at Henry and Copperas creek is not mandatory, but merely empowers the district to have such dams removed in case it becomes necessary to enable the district to carry out the purpose for which it was organized.

4. SAME—*sanitary district cannot unnecessarily destroy dams at Henry and Copperas creek.* Section 23 of the Sanitary District act, which requires the commissioners of the Illinois and Michigan canal to remove dams in the localities specified when an amount of water has been added by any drainage district sufficient to maintain a depth of not less than six feet at low water from such dams to and into the first lock in the canal at LaSalle without the aid of such dams, excludes the idea that the sanitary district may destroy such dams without reference to the necessity for such action.

APPEAL from the Circuit Court of Fulton county; the Hon. G. W. THOMPSON, Judge, presiding.

CHIPERFIELD, GRANT & CHIPERFIELD, and H. M. SNAPP, for appellants.

CHARLES C. GILBERT, and HALEY & O'DONNELL, (JOHN C. BLACK, of counsel,) for appellees.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

By agreement of the parties the two cases above entitled were consolidated for hearing before this court, and with the exception of the names and description of the parties they are the same. The first bill is brought by the People of the State of Illinois by the State's attorney in and for the county of Fulton in said State, and the other bill is brought by the canal commissioners. In both cases the defendants are the Sanitary District of Chicago, (a corporation existing under the laws of the State of Illinois,) and Alexander J. Jones, Zina R. Carter and Joseph C. Braden, each of whom is a trustee of the sanitary district. The real complainants in both bills are Clarence Snively, Howard O. Hilton and Homer J. Tice, described as the canal commissioners of the State of Illinois, and as such alleged to have charge, as proper officers and agents, of the Illinois and Michigan canal, the dams at Henry and Copperas creek and the river improvements one thousand feet each way therefrom.

The Illinois and Michigan canal, it is alleged in the bill, is owned, controlled and possessed by the State of Illinois, and extends from the city of Chicago to the city of Peru, where it is connected with a system of water improvements in the Illinois river, consisting of the above mentioned dams; that the canal and locks and dams were constructed by the canal commissioners from appropriations made by the State as well as proceeds of revenues of the canal; that the commissioners erected the lock and dam at Henry at a cost of $408,437.50, and the dam at Copperas creek was constructed to the height of six feet and seven inches at a cost of $358,832.12; that the latter of these dams was constructed and in use in 1877; that the purpose and objects of the erection of these dams and locks were to make the Illinois river a navigable stream for boats and other crafts from Copperas creek to Peru and to aid and facilitate the navigability of the Illinois river between those points, and thereby aid the canal for the purpose of trade and commerce; that prior to the erection of such dams the Illinois river had been of insufficient depth for navigation except in times of floods, but by reason of the construction of the dams a uniform depth at low-water mark had been produced between Copperas creek and Peru which rendered the said river navigable for that distance and greatly augmented and increased the receipts of the canal; that during the last year there passed through the locks at Copperas creek 523 crafts, of which 301 were steamboats and the balance barges in tow, loaded with various articles of merchandise; that the crafts so passing were of various sizes and tonnage, ranging from four to six hundred tons displacement. The bill charges the organization of the sanitary district of Chicago under an act of May 29, 1889, in force July 1, 1889, and then charges that the sanitary district, by its trustees and by Alexander J. Jones, Zina R. Carter and Joseph C. Braden, have for several weeks been confederating and conspiring together

for the purpose of removing the dams at Henry and Copperas creek forcibly and violently, and charges that such acts are illegal and without authority. The bill sets up certain proceedings of the board of trustees of the sanitary district, had on the 18th of October, 1899, by which they appointed a special committee to remove said dams; that afterwards, on the 10th day of November, the three trustees named met for the purpose of formulating ways for the removal thereof, and adopted a plan for their removal with the use of dynamite and other explosives to blow the same from the river and wholly remove and destroy the same, and that that committee is daily threatening to do so. The bill then states: "The complainants aforesaid show unto your honors that the removal of the dams aforesaid is wholly unnecessary, reckless and wanton, and is not requisite to the proper use and requirements of the channel constructed by the defendant, the Sanitary District of Chicago, to enable the Illinois river at all times to safely, properly, rapidly and effectively carry away all the water, sewage and other refuse matter obtained from the said drainage channel at all times and under all conditions, and that the said dams as at present erected and existing will not constitute or be an obstruction, in any way, to the capacity of the Illinois river to carry away all refuse matter obtained from the drainage channel as aforesaid, but that, upon the contrary, by reason of the added volume of water so received from the said drainage channel should it be turned into the Illinois river, as is claimed by the defendants hereto, the navigation of the Illinois river from Copperas creek to Peru would be benefited and increased by adding about twelve inches of water to the said river at its low and ordinary stage, and still the said river and the waters thereof would at all times be of ample capacity to safely meet the requirements and properly and effectively receive the discharge of the drainage channel and bear the same away without the removal of the said dams, or any

change, alteration or modification of them." The bill then alleges that the destruction of the dams would be of no benefit to the defendants in the conduct and use of the sanitary district, and their removal would lessen the carrying trade of the canal and prejudice the rights and interests of the people of the State of Illinois in the navigation of the Illinois river. The bill prays that the defendants be enjoined from in any way interfering, breaking, injuring or destroying the dam at Copperas creek and the dam at Henry, or any part or portion of either, or from wrecking or injuring any part or portion of the locks at said dams.

These bills were presented to the circuit court of Fulton county on the 13th day of November, 1899, and a temporary injunction was issued. Afterwards, on November 18, the sanitary district of Chicago interposed a general demurrer, and moved to dissolve the injunctions and dismiss the bills. Upon hearing in the Fulton county circuit court on the 28th day of November, 1899, the demurrer was sustained, whereupon the complainants asked leave to amend their bill, which was granted. Upon the filing of the amendments the defendants again demurred to the bills as amended and moved the dissolution of the temporary injunction and asked that the bills be dismissed, and upon the 14th day of December the court sustained the demurrer, dissolved the injunctions and dismissed the bills, from which the complainants prosecuted this appeal.

It was insisted on behalf of the sanitary district that by virtue of section 23 of the act of 1889, providing for the organization of such district, it was clothed with ample power to remove the said dams. This was denied by the complainants, and the question presented on this record is to be determined by the construction of section 23 of an act entitled "An act to create sanitary districts and to remove obstructions in the DesPlaines and Illinois rivers," approved May 29, 1889, and in force July 1, 1889.

The part of that section requiring construction is as follows: "In case a channel is constructed in the DesPlaines river as contemplated in this section it shall be carried down the slope between Lockport and Joliet to the pool commonly known as the upper basin of sufficient width and depth to carry off the water the channel shall bring down from above. The district constructing a channel to carry water from Lake Michigan of any amount authorized by this act, may correct, modify and remove obstructions in the DesPlaines and Illinois rivers wherever it shall be necessary so to do to prevent overflow or damage along said river, and shall remove the dams at Henry and Copperas creek in the Illinois river, before any water shall be turned into the said channel. And the canal commissioners, if they shall find at any time that an additional supply of water has been added to either of said rivers, by any drainage district or districts, to maintain a depth of not less than six feet from any dam owned by the State, to and into the first lock of the Illinois and Michigan canal at LaSalle, without the aid of any such dam, at low water, then it shall be the duty of said canal commissioners to cause such dam or dams to be removed. This act shall not be construed to authorize the injury or destruction of existing water power rights."

Under the legislation of the State of Illinois the Illinois and Michigan canal was placed in charge and control of canal commissioners, whose appointment was provided for. For many years the policy of the State with reference to the improvement of navigation in the Illinois river below LaSalle, and thereby adding to the freight to be carried by the Illinois and Michigan canal, was expressed by frequent acts of the legislature. It appears from the averments of the bill that as early as 1867 the State began to consider the question of the improvement of the river by slack-water navigation. In 1867 the legislature passed an act to secure the improvement of the Illinois and Michigan canal and its extension, and to

secure the improvement of the Illinois and other rivers, and it was provided that when the canal commissioners shall take possession of the Illinois and Michigan canal, the revenues derived therefrom, after making repairs therefrom, together with the unexpended proceeds of the sale of canal lands, shall be paid into the State Treasury and shall be and are appropriated for the construction of works named in the act, by section 10 of which, provision is made for the construction of the lock and dam on the Illinois river between Peoria and LaSalle. Under this provision of the statute the locks and dam at Henry, Illinois, were completed in January, 1872. The dam was of the height of six feet and four inches, and was constructed from revenues derived from the Illinois and Michigan canal. In 1873 the legislature of the State of Illinois passed an act authorizing the board of canal commissioners to construct a dam and locks at or near Copperas creek, where it empties into the Illinois river, which latter mentioned dam was completed in October, 1877. These dams were placed under control of the canal commissioners, whose duty it was made to keep the same in repair and preserve and protect them. The erection of the dam at Henry,—a distance of about thirty-eight miles below Peru—has caused an increase of the depth of water at Peru of about two and one-half feet. The erection of the dam at Copperas creek—about sixty miles below the dam at Henry—has caused an increase in the depth of water at the foot of the dam at Henry of more than two feet. By these dams the navigation of the Illinois river has been improved so that during the period of navigation on our rivers, which is for about nine months in the year without being interrupted by ice, the river has steadily been available for purposes of navigation. Navigation over that part of the river did not exist prior to the construction of these dams except in time of floods, and was of so uncertain a character that the river was but of little value in its availability for carrying purposes. By the

construction of the dams it was rendered a valuable water-way, affording a cheap method of carriage of freights, etc., from various points along the river, and became a means of water communication of exceeding value to those points.

It is a principle of construction that statutes must be interpreted according to their intention and meaning, and not always according to the letter. That which is within the intention is within the statute though not within the letter, and that which may be within the letter is not within the statute unless within the intention. Where the constitution requires the subject matter of an act to be stated in its title, the title of the act is of material importance and may control the statute or some portion of it. The purpose of the act with reference to the creation of the sanitary district, as expressed by its title, was to provide for the creation of sanitary districts and the removal of obstructions from the DesPlaines and Illinois rivers. It was held in *County of Perry* v. *County of Jefferson*, 94 Ill. 214, that the letter of a statute might be disregarded and the intent followed and allowed to prevail to obviate an absurd result, and it was held sufficient warrant to depart from the words of the statute when to carry them out would lead to an absurd consequence. Where the rights of the public or of third persons are involved, words in the statute importing permission or authority may be read as mandatory and words imposing a command may be read as permissive, whenever, in either case, such a construction is rendered necessary by the evident intention of the legislature. The words "may" and "shall," when used in a statute, will sometimes be read interchangeably, as will best express the legislative intent. The word "may" will be construed to mean "shall" when the public or third persons have a claim that the power ought to be exercised; but when the word "shall" is used, where no right or benefit to any one depends on its imperative use that word may be held

directory, merely, and by legislative intention to be used synonymously with the word "may." It is also permissible, in the construction of a statute, to transpose words and sentences, if by so doing the legislative intention can be determined. *Wabash, St. Louis and Pacific Railway Co.* v. *Binkert,* 106 Ill. 298.

Under these principles of construction, the language of section 23, without the addition or rejection of words, may be read as follows: "The district constructing a channel to carry water from Lake Michigan of any amount authorized by this act, may correct, modify and remove obstructions in the DesPlaines and Illinois rivers wherever it shall be necessary so to do to prevent overflow or damage along said river before any water shall be turned into the said channel, and shall (may) remove the dams at Henry and Copperas creek in the Illinois river. And the canal commissioners, if they shall find, at any time, that an additional supply of water has been added in either of said rivers by any drainage district or districts, to maintain a depth of not less than six feet from any dam owned by the State, to and into the first lock of the Illinois and Michigan canal at LaSalle, without the aid of any such dam, at low water, then it shall be the duty of said canal commissioners to cause such dam or dams to be removed. This act shall not be construed to authorize the injury or destruction of existing water power rights."

The word "shall" being thus construed as "may," the power conferred upon the sanitary district to remove the dams at Henry and Copperas creek, in the Illinois river, is not mandatory, nor is the removal of the dams necessary or requisite to enable the sanitary district to carry out the purpose for which it was organized. It could not have been contemplated by the legislature of this State that property of the State, erected at a cost of over three quarters of a million of dollars, and whose retention is of great benefit to the people and materially adds to

the navigability of the Illinois river and to the profit derived by the State from the tolls of the Illinois and Michigan canal, should be destroyed without a necessity existing therefor. The destruction of the dams at Henry and Copperas creek was therefore not contemplated by the legislature unless it became necessary to do so, and by the method of construction heretofore adopted the power of the district to remove the dams only exists under such conditions.

The method by which the canal was controlled by the commissioners during the long history of the Illinois and Michigan canal, in the State of Illinois, was well known to the legislature, and the legislation of the State under the present constitution, by which they had control of the canal, was recognized in the section before us for construction. The legislation of the State with reference to the construction of the dams by the canal commissioners, and the control of those dams and the duty to protect the same under the legislation of the State, was also well known to the legislature, and under the transposition of sentences and the construction as to words heretofore made, no mandatory directions for the removal of the dams at Henry and Copperas creek were given to the sanitary district, but the policy of the State with reference to the control of those dams by the State was recognized. The only mandatory direction in the statute with reference to the removal thereof is in this provision: "And the canal commissioners, if they shall find at any time that an additional supply of water has been added to either of said rivers by any drainage district or districts, to maintain a depth of not less than six feet from any dam owned by the State, to and into the first lock of the Illinois and Michigan canal at LaSalle, without the aid of any such dam, at low water, then it shall be the duty of said canal commissioners to cause such dam or dams to be removed." There is therefore no mandatory direction to the canal commissioners to remove these

dams, but an express limitation on their right to do so until the conditions named in this provision exist. This limitation on the power of the canal commissioners to remove the dams until stated conditions exist, followed by mandatory directions as to their removal when such conditions are an accomplished fact, is evidence that there was no legislative intention to confer the power upon the sanitary district to destroy these dams without reference to the fact whether their destruction was necessary for the purpose for which the sanitary district was organized.

We hold that under the circumstances disclosed by this record the destruction or removal of the dams at Copperas creek and at Henry, or either of them, was not rendered necessary for any purpose of the sanitary district. By this construction of the statute the slack-water navigation, to the extent it has been benefited by this great expenditure of the State, is preserved until it is determined, as a result of the construction of the sanitary district canal, that a necessity no longer exists for the preservation of the dams. Should theories as to the effect of the volume of water passing through the sanitary district canal, and its effect with reference to the increased current and depth of channel in the Illinois river, never, in fact, be realized, the slack-water navigation of the Illinois river is preserved, to the great benefit of the people living along the stream.

We hold that the circuit court of Fulton county erred in sustaining the demurrer and dismissing the bill in each case. The judgment is reversed and the cause remanded to that court, with directions to overrule the demurrer and motion to dissolve the injunctions and retain the bills for hearing. *Reversed and remanded.*