# Mary T. Bourke v. The Sanitary District of Chicago et al.

1. MUNICIPAL CORPORATIONS—*Can Exercise Their Powers Only in the Manner Authorized by the Act Creating Them.*—A municipal corporation is the mere creature of law and derives its powers from the act creating it. It is incapable of exercising its powers in any manner not authorized by such act.

2. SANITARY DISTRICT OF CHICAGO—*Power to Fix the Salary of Its Engineer.*—The language of the act creating the Sanitary District of Chicago is plain and explicit to the effect that the engineer shall receive for his services the sum of ten dollars per day, and this excludes the idea that he can receive more.

3. SAME—*Ordinance Fixing the Engineer's Salary Void.*—The ordinance of the Sanitary District of Chicago passed June 2, 1899, fixing the salary of its engineer at $1,500 per month, is void, for want of power in the district to enact it.

4. CHANCERY PRACTICE—*Dismissal of a Bill for Want of Equity, a Final Order.*—The dismissal of a bill out of court for want of equity, when it disposes of the entire case, is a final order, and as such is appealable.

**Bill for an Injunction.**—Appeal from the Circuit Court of Cook County. Heard in this court at the March term, 1900. Reversed and remanded. Opinion filed December 6, 1900.

JAMES A. BRADY, attorney for appellant.

CHARLES C. GILBERT, attorney for appellees; P. C. HALEY, of counsel.

MR. JUSTICE WINDES delivered the opinion of the court.

Appellant, a citizen, property owner and tax payer in the Sanitary District of Chicago, by her bill as amended, brought on behalf of herself and of all other tax payers and property owners within said district, against The Sanitary District of Chicago, a body corporate and politic under the laws of this State, The Chicago National Bank, and Isaac Taylor, Albert Schoch and John Lambert, commissioners appointed by the Governor of Illinois, pursuant to the 27th section of the act of the legislature of Illinois to create sanitary districts, etc., in force July 1, 1889, sought to have declared null and void a certain ordinance passed June 3, 1899, by the board of trustees of the Sanitary District, and to enjoin said commissioners from drawing or making any checks, orders, warrants or drafts on a sum of $25,000, which was by said ordinance placed to the credit of said commissioners in the Chicago National Bank; also to enjoin the bank from paying any such checks, orders, warrants or drafts, and to enjoin the Sanitary District from paying or transferring from its treasury to said commissioners any other sum or sums of money to be used by them in the inspection of the drainage channel constructed by said Sanitary District, and asked general relief.

The appellees, the Sanitary District and the Chicago National Bank, demurred generally to the bill as amended, which demurrer was sustained by the chancellor, and as the

record of the decree shows, the bill was, on November 20, 1899, dismissed for want of equity. A certificate of evidence, which was subsequently made and signed by the chancellor, shows that the demurrer was sustained to the bill as amended as to the defendants, the Sanitary District and the Chicago National Bank, but it does not appear that the decree of the court was in any respect changed.

After the cause had been taken upon appellant's briefs and abstracts, and after appellees had applied to this court for an extension of time in which to file their briefs, which had been granted, they interposed a motion to dismiss the appeal, for the reason, as it is claimed, that the appeal was not from a final order, the cause not having been disposed of as to said commissioners.

This motion must be denied. The record of the decree shows, without qualification, that the bill was dismissed out of court for want of equity, making no exception as to the defendants, the commissioners. The certificate of evidence so-called, can not change the decree of the court, which disposed of the whole cause, is final and appealable. Moreover, the statement in the certificate of evidence that the bill was dismissed as to the defendants, the Sanitary District and the Bank, is not inconsistent with the decree dismissing the bill out of court for want of equity.

The principal point for consideration is as to the validity of the ordinance passed by the trustees of the Sanitary District. The bill, after setting out the organization of the Sanitary District of Chicago under the act of the General Assembly for that purpose, the names of the trustees and their power to pass all necessary ordinances for the management of the business of the district, and their power to levy and collect taxes for corporate purposes, alleges, in substance, that pursuant to the 27th section of the Sanitary District act, the Governor appointed the appellees, Taylor, Schoch and Lambert, commissioners to inspect the drainage channel constructed by said trustees; that said 27th section provides that "said commissioners shall, within ten days after such appointment, meet at the city of

Chicago, and shall appoint a competent civil engineer, and they may employ such other assistance as they may require to expeditiously perform their duties.  *  *  *  Such commissioners and engineer shall receive for their services $10 per day each, and their reasonable expenses and outlays for the time by them necessarily employed in the discharge of their duties, which shall be paid to them from the State treasury; and the said Sanitary District shall reimburse the State for all expenses and disbursements on account of said commission;  *  *  *" also, that said commissioners met about June 3, 1899, at Chicago, and appointed one Desmond Fitzgerald the civil engineer of the said commission and fixed his salary at $1,500 per month; that on the same day the trustees of said district passed the following ordinance, to wit:

"Whereas, the act of the General Assembly of Illinois, under which was organized the Sanitary District of Chicago, provides that the compensation and expenses of the State commission and engineer, in the inspection of the drainage channel in accordance with section 27 of said act, shall be paid from the State treasury, and the State reimbursed therefor by the Sanitary District of Chicago; and

"Whereas, the Forty-first General Assembly of the State of Illinois failed to make an appropriation for the payment of the commissioners who have just been appointed by the Governor, or for an engineer, and other services and expenses requisite for a proper inspection of the drainage canal; and

"Whereas, the necessity for immediate inspection and report by said commissioners is of paramount importance to the Sanitary District of Chicago, the Desplaines and Illinois valley, and the inhabitants thereof; and

"Whereas, the salary of $10 per day fixed by the statute is inadequate for the services of a civil engineer of such competence and experience as to expeditiously perform the work of surveying and inspection, within the time necessary to permit the opening of the channel to its usefulness on the date at present contemplated; and

"Whereas, it is the sense of the board of trustees of the Sanitary District of Chicago that the State commission aforesaid will find it necessary, and will be justified in paying to the engineer selected by them and provided for in

section 27 of said act, a salary in excess of that contemplated by law; therefore, be it

"Resolved, that in order to meet the emergency and conform with the necessities set forth in the foregoing preamble, the sum of $25,000 be and the same is hereby appropriated from the treasury of the Sanitary District of Chicago for the use of the State commission appointed by the Governor of Illinois, in accordance with section 27 of the 'Act to create sanitary districts and remove obstructions in the Desplaines and Illinois rivers,' and that said amount be placed to the credit of said State commission in the Chicago National Bank, subject to the order and warrants of said commissioners, on the approval of the Governor of the State of Illinois, to meet the salaries and other expenses to be incurred by said commission in making the inspection of said drainage channel in accordance with said act, and including such additional sum said commission may find it necessary to pay for the services of a competent engineer, over and above the per diem of $10, provided by the statute."

Also that pursuant to said ordinance said trustees took from the treasury of the Sanitary District and from the funds obtained by the levy and collection of taxes upon property within the district the sum of $25,000, and placed it in said bank to the credit of said commissioners for the purpose of making the illegal payments set forth in the ordinance; that said commissioners and engineer and some of said trustees made a preliminary inspection of said drainage channel and the commissioners avow their intention to proceed and complete the inspection thereof, and to pay out the whole of said $25,000, and such other sums as may be transferred and appropriated by said trustees for the salaries of said commissioners, the necessary expenses of said inspection and the salary of said engineer at the rate of $1,500 a month; that said $25,000 will be totally inadequate to meet and make the payments alleged to be intended to be made by said commissioners, and that said trustees intend and have stated their intention to appropriate and transfer to said commissioners such other and further sums from the funds in their hands as such trustees, or from such funds as may hereafter be received by them from the levy and col-

lection of taxes upon property in said district, as may be required.

The contention of appellant is that said ordinance is absolutely void; that the placing of said $25,000 to the credit of said commissioners is a misappropriation of the funds of the Sanitary District by its board of trustees, and is illegal, as is also the fixing of the salary of said engineer at $1,500 per month; but appellees claim to the contrary.

The language of the act is plain and explicit to the effect that the engineer shall receive for his services ten dollars per day. That excludes the idea that he·should receive more. The power of the commissioners in this regard is conferred by the statute which authorized their appointment, and by that only. If they may go beyond the terms of the statute in fixing his salary, there is no limit to their power, and they might, had they seen fit, just as well have fixed his salary at $1,500 a day as at $1,500 per month. We think that the argument of counsel for appellees, that because the statute fails to fix a maximum amount to be paid to the engineer for his services, that therefore the commissioners are not limited as to the amount of his salary, is not tenable. The naming of ten dollars per day as his compensation is the exclusion of a larger compensation. Betts v. Menard, Breese, 395; Perry v. Kinnear, 42 Ill. 161–4, and cases cited; Adams v. Brenan, 177 Ill. 194–8, and cases cited; 15 Am. & E. Enc. Law, 1039 *et seq.* and cases cited; 1 Dillon Mun. Corp., 145–6, and cases cited.

In the Betts case, *supra*, in which the Supreme Court had under consideration the power of the county commissioners of Randolph county to grant a ferry license to a corporation, and the power of the latter to take such grant, the court say :

" A corporate body can act only in the manner prescribed by the act of incorporation, which gives it existence. It is the mere creature of the law, and derives all its·powers from the act of incorporation, and is incapable of exerting its faculties only in the manner that act authorizes."

In the Perry case, *supra*, in which the power of the board of supervisors of Woodford county to appropriate money

to compensate a judge of the Circuit Court in addition to the salary allowed him by law, was under consideration, an injunction under a bill by citizens, property owners and tax payers was sustained upon the principle announced in the Betts case, which the court say " has been fully recognized and applied in various cases " that are cited.

To a like effect is the Adams case, *supra*, in which it was held that the board of education of Chicago should be enjoined at the suit of tax payers, the owners in equity of the city school fund, from appropriating such fund for a purpose not warranted by law, viz., expending the money of such fund in carrying out a contract for work to be done in the construction of school buildings, which provided that none but union labor should be employed in such work.

The same principle, in our opinion, applies to that part of the ordinance appropriating funds for the payment of the State commissioners and their engineer, and for their reasonable expenses and outlays for the time by them necessarily employed in the discharge of their duties.

The 27th section of the Sanitary District act, besides the provisions above referred to, makes it the duty of said commissioners, in case they should find on making their inspection of the drainage channel that it was constructed in accordance with the provisions of section 23 of the act, to so certify to the Governor, who should thereupon authorize the water and sewage to be let into the channel. But in case they should find that the channel was not so constructed, then it was made their duty to file a bill in chancery, in any court of competent jurisdiction, against the Sanitary District, enjoining it from admitting water or sewage into said channel until the provisions of the act should have been complied with.

It is apparent from these provisions that it was the intention of the legislature that the State commissioners should be entirely free, in the performance of their duties, from any control of or obligation to the sanitary trustees. The honest and unbiased performance of their duties is a matter of the gravest importance to many people of the State out-

side the limits of the Sanitary District, and in order to secure that, it was, no doubt, deemed essential that no possible influence of the sanitary trustees should be exerted over them, as would naturally be the case if they were required to look to said trustees for their compensation, expenses and outlays. Necessarily, if the commissioners are paid from the State treasury, as the act provides, before such payment is made, the proper State authorities would pass upon the questions as to whether the expenses and outlays claimed by them were reasonable, or otherwise, and whether the time which they and their engineer and other assistants might employ, was necessarily employed in the discharge of their duties. The determination of these questions is in no way committed by the provisions of the act to the sanitary trustees, and there is no language used from which it could be implied, as is the case with reference to the State.

The act plainly providing, as it does, that the commissioners and engineer should be paid for their services, expenses and outlays from the State treasury in the first instance, and that the Sanitary District should reimburse the State therefor, and no other mode of payment being provided, we think it follows that the attempt of the sanitary trustees to provide, by the ordinance in question and their action thereunder, a different mode of payment, is without authority or sanction of law.

Apply the Betts case, *supra*. The Sanitary District " is incapable of exerting its faculties only in the manner that act (Sanitary District act) authorizes." There is clearly a lack of power which permits to be done what the sanitary trustees have attempted to do.

The argument of counsel for appellees, that because the legislature had failed to make an appropriation and that the necessity of immediate inspection of the drainage channel by the commissioners was of paramount importance to the Sanitary District, the Desplaines and Illinois valley and the inhabitants thereof, an emergency existed which justified the action of the trustees in appropriating money for

the payment of the commissioners and engineer, and for their expenses and outlays, is not supported by authority which is applicable to the question here presented. They seem to rely mainly on the case of Canal Commissioners v. Sanitary Dist., 184 Ill. 597, which holds, in effect, that the words, "may" and "shall,' when used in a statute, will sometimes be read interchangeably, as will best express the legislative intent. We are unable to conceive why that case should control the decision here. The court in that case held that it was plain, from a reading of the context, that the intent of the legislature, when it used the word "shall," was, that it was used in the sense of "may," and so construed it.

In this case nothing has been called to our attention, nor have we been able to discover anything from which it can reasonably be held that the word "shall" in the clause of the 27th section of the act which reads, "which shall be paid to them from the State treasury," was used in the sense of "may." In fact, we believe, for the considerations we have named, such a construction would do violence to the legislative intent. We therefore conclude that the whole ordinance in question is void, and the decree sustaining the demurrer to and dismissing the appellant's bill, as amended, for want of equity, is reversed, and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.