People of the State of Illinois, Plaintiff in Error, v. Joseph Finkelstein et al., Defendants. Joseph Finkelstein, Defendant in Error.

Gen. No. 40,447.

364

Opinion filed March 28, 1939.   Rehearing denied April 20, 1939.

THOMAS J. COURTNEY, State's Attorney, for plaintiff in error; EDWARD E. WILSON, JOHN T. GALLAGHER, BLAIR L. VARNES, MELVIN S. REMBE, ROBERT E. WRIGHT, and THOMAS G. BUGAN, Assistant State's Attorneys, of counsel.

ABRAHAM L. MAROVITZ, BRODKIN & BIEBER, and GRENVILLE BEARDSLEY, all of Chicago, for defendant in error.

MR. PRESIDING JUSTICE SCANLAN delivered the opinion of the court.

The People seek to reverse a judgment quashing the indictment in the instant cause as to Joseph Finkelstein, defendant in error. The indictment was returned against defendant in error, David Robbins, Ralph Shutan, Theodore Antman and State Auto Finance Corporation, a corporation. It contains a number of counts, and charges that defendants conspired with other persons to cheat and defraud the State of Illinois of a large amount of moneys "that were due and of any moneys that should in the future become due to said State . . . under the provisions of a certain Act [Retailers' Occupation Tax Act, secs. 440–453, inclusive, ch. 120, Ill. Rev. Stat. 1937] . . . by reason of retail sales of tangible personal property that had been made and that should be made in the future in said State . . . by said . . . Finance Corp. . . . ''; that Finance Corporation sold a large amount of tangible personal property, to wit, automobiles, at retail, and was subject to the said Act, and that it was its duty to pay the Department of Finance three per cent of the gross cash receipts of such retail sales; that defendants were agents of said corporation, managed its business and affairs, the sale of its tangible personal property, and the collection of its cash, and that they caused to be made and signed on behalf of said corporation certain false, fraudulent and incorrect reports and tax returns purporting to be true and correct reports and

tax returns in respect to the gross retail sales of tangible personal property made within the State by said corporation during certain respective calendar months, and also receipts from such sales during such months, as required by the provisions of said Act; that defendants unlawfully and fraudulently agreed with certain other persons to file with said Department on behalf of said corporation said false and fraudulent reports and tax returns and to cause said Finance Corporation to unlawfully and fraudulently fail to keep a record of all retail sales of tangible personal property made within the State by said corporation, together with invoices, bills of lading, sales records, copies of bills of sale and other pertinent papers and documents relating to said retail sales of tangible personal property, as required by the provisions of said Act, for the purpose of deceiving said Department and the State in respect to the amount of tax due and payable under the Act from said Finance Corporation to the State; and to unlawfully and fraudulently cause said corporation to fail to pay to said Department divers sums of money that were due and that should in the future become due to the State from said corporation as tax under said Act.

Defendant in error filed a written motion to quash the indictment upon the following grounds:

"1. The said indictment and each count thereof is insufficient to charge an offense.

"2. The defendant, Joseph Finkelstein, is immune from and not subject to prosecution for the matters, things and transactions charged and set out in the said indictment and in each and every count thereof for the reason that he, . . . on January 24, 1938, . . . as the duly qualified and acting Vice President and agent of said State Auto Finance Corporation, a corporation, one of the defendants herein, then and there had in his custody and possession certain books and records of

said . . . Corporation; that . . . he, . . . in obedience to a subpoena duces tecum, duly issued out of the Department of Finance . . ., served upon him, duly appeared before the [said] Department . . . before one Harold Durchslag [Durschlag], duly designated by the Director of Finance of the State of Illinois to hear the matter, cause, proceeding and hearing to determine the amount of money due and owing the State of Illinois from . . . Finance Corporation as and for Retailers Occupational Tax, . . . which said subpoena duces tecum commanded him . . . to appear and testify before the Department of Finance . . . , to bring with him and produce all books and records, Cash Receipts, General Ledger, Sales Journal, Sales Invoices, Inventory Records, Purchase Records, General Journal, Cancelled Checks, Petty Cash Record and Vouchers, and all other documents, letters and paper writings whatsoever, relating to sales of tangible personal property by the State Auto Finance Company;

"That in obedience to the command of said subpoena . . . [he] appeared as aforesaid, was sworn to testify as a witness and testified on said hearing, but objected to producing said books, records and papers on the ground that to be compelled so to do would violate the rights guaranteed him by the Constitution of this State; . . . [Here follows a statement as to certain proceedings before the said Durschlag, all of which appears later in a stipulation of facts.]

"That thereupon . . . [he], in obedience to said subpoena . . . , produced before and delivered to the Department of Finance . . . on said hearing the following books and records of said . . . Finance Corporation; general ledger for the year 1936, from January to December, inclusive; record of the cash receipts from January 1936 to December 1936; cash disbursements from January 1936 to December 1936; sales

journal from January 1936 to December 1936; general ledger from January to December 1936; inventory record for the same period; record of cash receipts from January 1937 to December 1937; cash disbursements from January 1937 to December 1937; sales journal for the year 1937; inventory record for 1937; general ledger for 1937, January to December; being all of the books and records of said State Auto Finance Corporation in . . . [his] possession. . . .

"That said records and documents, and each of them, disclose facts which would tend to prove material allegations of the indictment herein and would be links in a chain of evidence to establish the guilt of this defendant thereunder, and tend to and do incriminate this defendant;

"That the transactions, matters and things set out and charged in the said indictment herein, and in each and every count thereof, were and are the identical matters, transactions and things concerning which said Joseph Finkelstein, a natural person, in obedience to a subpoena, produced evidence before . . . Harold Durchslag, an employee of said Department, on January 24, 1938;

"That by reason of the premises and by virtue of the Statute in such case made and provided, this defendant . . . is immune from prosecution for and cannot be subjected to any criminal penalty for or on account of any of the matters, things and transactions set out in said indictment herein, and in each count thereof.

"Wherefore, the defendant . . . prays that the indictment herein, and each count thereof, may be quashed, and that he may be hence dismissed and discharged."

The affidavit filed in support of the motion supports the facts set forth in the motion. No counter-affidavits were filed by plaintiff. Thereafter defendant in error

filed a special plea of immunity as to him, which sets up that plaintiff was barred and precluded from prosecuting the indictment as to him. It contains, in substance, the same averments as are set up in the motion to quash. Plaintiff filed a replication to the special plea, which avers ''that they should not be precluded by anything in said plea alleged from further prosecuting this indictment because they say that all of the books and records produced by . . . Finkelstein were the books and records of the State Auto Finance Corporation, a corporation; and that no part of the testimony given by . . . Finkelstein before Harold Durchslag and the Department of Finance . . . related to any facts concerning which said defendant might under the Constitution and law claim immunity from testifying and that in the giving of testimony before . . . Durchslag and Department of Finance the said defendant testified to no facts except his name, address, official connection with said State Auto Finance Corporation and the identification of the books and records produced by him. . . .''

The bill of exceptions recites that the cause came on for hearing before the trial court upon the motion to quash the indictment and the affidavit in support of it; that the State's attorney called the attention of the court to the fact that the motion to quash the indictment had not been passed upon although a special plea of immunity and a replication to the same had been filed, and stated that he was of the opinion that he would ask leave of the court to withdraw the replication to the special plea and move the court to strike the plea in order that the motion to quash might be considered, but after a colloquy between the court and the State's attorney it was concluded that the practical effect would be the same whether the court passed upon the motion to quash or the special plea.

The parties then stipulated that in the hearing before Durschlag the following occurred:

"Mr. Durschlag: Let the record show that Mr. Finkelstein is appearing here today in response to a subpoena duces tecum, whereby he is requested to produce all books and records, cash receipts, general ledger, sales journal, sales invoices, inventory records, purchase records, general journal, cancelled checks, petty cash record and vouchers, and all other documents, letters and paper writings whatsoever, relating to sales of tangible personal property by the State Auto Finance Company.

"Joseph Finkelstein pursuant to a subpoena duces tecum, was called as a witness, and having been first duly sworn, was examined and testified as follows:

"Direct Examination by Mr. Durschlag:

"Q. State your name, please. A. Joe Finkelstein.

"Q. What is your business or occupation? A. Automobile business.

"Q. Used or new automobiles? A. Some new, some used.

"Q. What kind of agency do you have? A. I have no agency; we just buy new cars and sell them.

"Q. Where is your business located? A. 3939 Washington Boulevard.

"Q. Who is the owner and operator of that business?

"A. That is a corporation.

"Q. What is the name of the corporation? A. State Auto Finance.

"Q. What is your capacity in that corporation?

"A. Vice President.

"Q. Are you thoroughly familiar with the conduct and function of that business? A. Yes, sir.

"Q. And when did this business, State Auto Finance Company, begin its operations?

" . . .

"A. To the best of my ability, it began two years ago.

"MR. MALKIN: When did you become a corporation? A. I don't know.

"MR. DURSCHLAG: Was it in the year 1936 or 1935? A. '35, I guess.

"Q. Do you, in response to this subpoena duces tecum, have any books and records to produce concerning the operations of the State Auto Finance Company, from the period of the inception of the business, to the present time? A. Yes, sir.

"Q. May I have those, please? A. We have a bunch of them.

"Q. Will you kindly produce them, I don't see them.

"MR. MALKIN: The books are over there.

"MR. FINKELSTEIN: I refuse to answer any questions relative to the evidence contained in those books because any answers that I may give may tend to incriminate me, and I therefore claim immunity as guaranteed by the State of Illinois.

"MR. DURSCHLAG: Mr. Finkelstein, the Department can not give effect to your claim for immunity because it provides in Section 9 of the Retailers' Occupation Tax Act, that no person shall be excused from testifying or from producing any books, papers, records or memoranda in any investigation or upon any hearing, when ordered to do so by the Department or any officer or employee thereof, upon the ground that the testimony or evidence, documentary or otherwise, may tend to incriminate him or subject him to a criminal penalty, but no person shall be prosecuted or subjected to any criminal penalty for, or on account of, any transaction made or thing concerning which he may testify or produce evidence, documentary or otherwise, before the Department or an officer or employee therof.

"Mr. MALKIN: That is what Mr. Finkelstein says, that he is producing those books and records under a subpoena issued by the Department. He personally has been subpoenaed, and he has been told not to testify with reference to those records on the grounds that any evidence he may give may tend to incriminate him.

"Mr. DURSCHLAG: However, Section 9 of the Retailers' Occupation Tax Act provides for immunity from criminal prosecution as a result of any evidence pursuant to any evidence in response to a subpoena.

"Mr. MALKIN: This hearing is based upon Section 9.

"Mr. DURSCHLAG: This hearing is not based upon Section 9. This present ruling with respect to exemption is based upon Section 9, and therefore we cannot give effect to his claim for immunity since there is no possibility of incrimination because of the provisions of Section 9.

"Mr. MALKIN: You contend, therefore, that there can't be any criminal prosecution by virtue of his testifying here?

"Mr. DURSCHLAG: There could not be.

"Mr. MALKIN: That was my understanding. I think by virtue of the last part of Section 9 that any testimony he may give contained in those records, if they tend to incriminate him, he will be immune to prosecution by the State of Illinois, by virtue thereof. My idea is this: If you and I think the same way, I will be glad to let him testify.

"Mr. DURSCHLAG: I think the provisions of Section 9 are clear. You may proceed in this matter.

"Mr. MALKIN: Would you want this considered as a continued matter and let Mr. Perry examine all the books, bring Mr. Finkelstein back again to testify as to what he wants to know?

"Mr. DURSCHLAG: Let the record show in response to this subpoena, the following books and records were produced."

(Here followed the further proceedings before the trial court.)

"[MR. WRIGHT, assistant State's attorney:] That was the extent of the testimony and all the testimony given by Mr. Finkelstein at the hearing. I think we may further stipulate that State Auto Finance Corporation is a corporation, and that Mr. Finkelstein was an officer and Vice President of that corporation. Is that right?

"MR. MAROVITZ [attorney for Finkelstein]: That is right.

"MR. WRIGHT: It is so stipulated.

"MR. MAROVITZ: And that pursuant to subpoena, the books were tendered to the Department of Finance, and they were taken by them.

"MR. WRIGHT: Yes, they got quite a number of the books of the corporation.

"THE COURT: Those are the books you referred to, books, records, cash receipts, general ledger, as you described?

"MR. WRIGHT: I don't know just what they were, but they were produced by Finkelstein in response to this subpoena, as a matter of fact, produced by him as Vice President.

"MR. MAROVITZ: As a matter of fact, the books demanded in the subpoena were given to the Department of Finance, and they were audited by the Department.

"MR. WRIGHT: I can't agree to that, your Honor. I am informed that is correct, but I don't know personally, I do not think it is material for this hearing.

"MR. MAROVITZ: They are in the possession of the State's Attorney now." (No response by the State's Attorney.)

Written arguments of counsel were submitted to the trial court and the matter was taken under advisement. Thereafter the court held that the motion to quash should be sustained because the defendant was entitled to immunity under section 9, "and that the record in-

dicates here the evidence obtained at that time was used in procuring this indictment.''

· Section 8 of the Retailers' Occupation Tax Act (sec. 447, ch. 120, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 119.460]) provides: ''For the purpose of ascertaining the correctness of any return, or for the purpose of determining the amount of tax due from any person engaged in the business of selling tangible personal property at retail, the department or any officer or employee of the department designated, in writing, by the director thereof, may hold investigations and hearings concerning any matters covered by this Act and may examine any books, papers, records or memoranda bearing upon the sales of tangible personal property of any such person and may require the attendance of such person or any officer or employee of such person, or of any person having knowledge of such sales, and may take testimony and require proof for its information. In the conduct of any investigation or hearing, neither the department nor any officer or employee thereof shall be bound by the technical rules of evidence and no informality in any proceeding, or in the manner of taking testimony, shall invalidate any order, decision, rule or regulation made or approved or confirmed by the department. The department or any officer or employee thereof shall have power to administer oaths to such persons.''

Section 9 of the Act (sec. 448, ch. 120, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 119.461]) provides: ''No person shall be excused from testifying or from producing any books, papers, records or memoranda in any investigation or upon any hearing, when ordered to do so by the department or any officer or employee thereof, upon the ground that the testimony or evidence, documentary or otherwise, may tend to incriminate him or subject him to a criminal penalty, but no person shall be prosecuted or subjected to any crimi-

nal penalty for, or on account of, any transaction made or thing concerning which he may testify or produce evidence, documentary or otherwise, before the department or an officer or employee thereof; provided, that such immunity shall extend only to a natural person who, in obedience to a subpoena, gives testimony under oath or produces evidence, documentary or otherwise, under oath. No person so testifying shall be exempt from prosecution and punishment for perjury committed in so testifying.''

Section 10 of the Act (sec. 449, ch. 120, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 119.462]) provides, *inter alia:* ''Any Circuit Court of this State, or any judge thereof, either in term time or vacation, upon the application of the department or any officer or employee thereof may, in its or his discretion, compel the attendance of witnesses, the production of books, papers, records or memoranda and the giving of testimony before the department or any officer or employee thereof, by an attachment for contempt, or otherwise, in the same manner as production of evidence may be compelled before said court.''

The primary object of the aforesaid sections is to enable the State to secure the amount of tax actually due it from persons and corporations engaged in the business of selling tangible personal property at retail.

''Immunity statutes are liberally construed, to the end that one who has testified under them shall not be later subjected to punishment for crimes disclosed. (*People v. Boyle, supra* [312 Ill. 586] ; *People v. Sharp,* 107 N. Y. 427.)'' (*People v. Rockola,* 346 Ill. 27, 39.) An immunity statute providing that a witness shall not be liable to criminal prosecution for any transaction concerning which he may be required to testify, must, to be valid, be coextensive with the protection afforded the witness by the constitution, as legislation cannot abridge the constitutional privilege. (*People*

376

*v. Boyle, supra.*) Immunity statutes are enacted because of the difficulty in procuring evidence in certain kinds of cases. See *People v. Rockola, supra,* where the defendant was charged with bribing a custodian of lost property of the city of Chicago. As to the Retailers' Occupation Tax Act it was recognized, apparently, by the legislature that there would be a very great number of "investigations and hearings" started by the State for the purpose of ascertaining the correctness of tax returns, and that if the Act was to be made effective it would be necessary to give the Department of Finance summary power to ascertain the correctness of any return and to determine the amount of tax actually due from any person or corporation engaged in the business of selling tangible personal property at retail. By section 8 the Department, or any officer or employee thereof, is given drastic power in the conduct of any investigation or hearing. The examiner is not bound by the technical rules of evidence, nor is he required to observe formality in the proceedings. It is a one-sided investigation in which the State takes testimony and requires proof *"for its information."* It was undoubtedly recognized also by the legislature that in order to make the investigation an effective one it would be necessary to enact provisions to compel persons to produce books, papers, records or memoranda relating to the business under investigation and to testify in reference to the same, but that with such provisions in the Act it would still be difficult for the State to procure evidence unless the Act contained provisions that would afford a witness immunity protection coextensive with the protection afforded him by the constitution. Indeed, the compulsory provisions in section 9 would not be valid if it were not for the immunity provision in the section. It was for these reasons that the legislature incorporated in section 9 the immunity provision. But while a wit-

ness is granted immunity ''for, or on account of, any transaction made or thing concerning which he may testify or produce evidence, documentary or otherwise,'' section 9 further provides that ''no person so testifying shall be exempt from prosecution and punishment for perjury committed in so testifying.''

Neither in the trial court nor here has defendant in error assigned any reason why the indictment was not sufficient upon its face, and the sole question for us to consider is, Was defendant in error, under the record, immune from prosecution.

Defendant in error argues that independently of section 9 of the Retailers' Occupation Tax Act, ''the officer of the Department of Finance, conducting an administrative hearing to ascertain the sales tax liability of State Auto Finance Corporation, and acting in a *quasi-judicial capacity,* promised defendant he would be immune from prosecution'' if he produced the books and records called for by the subpoena *duces tecum,* and that the good faith and dignity of the State require that the promise be kept. While Durschlag, the employee of the Department of Finance, read section 9 to defendant in error and gave his interpretation of the same, he had no power to grant immunity to defendant in error. If there had been a trial of the instant cause and the State had offered the books and records of the Finance Corporation produced by defendant in error before Durschlag as evidence against defendant in error, upon apt objection a question might arise as to whether that evidence should be excluded, independently of section 9, upon the ground that it was obtained from defendant in error because of the nature of the statements made by Durschlag to him. (*People v. Martorano,* 359 Ill. 258.) However, no such question is before us for determination.

Plaintiff contends that the officers of a corporation have no constitutional privilege against producing cor-

porate books and papers even though they may tend to incriminate them as individuals, and that therefore the immunity provision of section 9 has no application to defendant in error. A corporation acts only through its agents. The indictment charges, *inter alia,* that defendant in error conspired with other defendants to cause Finance Corporation to fail to keep a true record of all of the retail sales of tangible personal property made by said corporation and to cause said corporation to file with the Department of Finance false and fraudulent reports and tax returns of all of the retail sales of tangible personal property made by said corporation, thereby deceiving said Department and the State in respect to the amount of taxes due from said corporation to the State and payable to it under the provisions of the Act. Defendant in error's motion to quash and his affidavit in support of the same set up the various books, records and documents of the Finance Corporation produced by him at the hearing and delivered by him to Durschlag, and the motion and affidavit aver: "That the said records and documents, and each of them, disclose facts which would tend to prove material allegations of the indictment herein and would be links in a chain of evidence to establish the guilt of this defendant thereunder, and tend to and do incriminate this defendant; that the transactions, matters and things set out and charged in the said indictment herein, and in each and every count thereof, were and are the identical matters, transactions and things concerning which said Joseph Finkelstein, a natural person, in obedience to a subpoena, produced evidence before said Department of Finance of the State of Illinois and before Harold Durchslag, an employee of said Department, on January 24, 1938." The aforesaid averments were not answered in any pleading of plaintiff, nor did it offer any evidence in rebuttal of the same, although the parties stipulated as to certain

facts. When the trial court assumed that the evidence was used before the grand jury the assistant State's attorney did not question the correctness of the assumption. The indictment charges that one of the unlawful objects of the alleged conspiracy was to fail to keep and cause to be kept on behalf of the Finance Corporation a "record of all retail sales of tangible personal property made within the said State of Illinois by the said State Auto Finance Corp.," and it is plain, from a number of charges in the indictment, that the books, records, etc., of Finance Corporation were presented to the grand jury. Moreover, the proceedings before Durschlag were continued to allow the auditor for the Department of Finance (Perry) to examine the books and it was agreed that after the examination had been completed defendant in error might be called again to testify. Upon the hearing before the trial court it appeared that the auditor had examined the said books, records, etc., and the statement of counsel for defendant in error that the State's attorney thereafter took possession of the books, records, etc., was not challenged by plaintiff. That the books, records, etc., formed the basis of the indictment against defendant in error is conclusively shown by the fact that it appears from the back of the indictment that the first witness called before that body was Auditor Perry. But in our opinion it is entirely immaterial what use, if any, plaintiff made of the books, records, etc., produced by defendant in error. Section 9 does not provide nor intend that the evidence, documentary or otherwise, given by a witness before the Department of Finance must be used before the grand jury before immunity can be claimed. It would defeat the very purpose of the immunity provision in section 9 if the State could prevent immunity by withholding the documentary evidence in the instant case from the grand jury. Nor does it matter whether or not the

books, records, etc., tended to incriminate defendant in error. Nor is there any merit in the contention of plaintiff that defendant in error, as an officer of the Finance Corporation, had no constitutional privilege against producing the corporate books and papers even though they might tend to incriminate him as an individual and that therefore the immunity provision of section 9 had no application to defendant in error. Section 9 provides that *"no person* shall be prosecuted or subjected to any criminal penalty for, or on account of, any transaction made or thing concerning which he may testify . . . under oath.'' The subject of the investigation in question was the amount of the tax due the State from the Finance Corporation, and it is undisputed that defendant in error produced documentary evidence concerning the same. In that state of the record the broad language of section 9 clearly grants him immunity. The authorities cited by plaintiff in support of the instant contention have, in our opinion, no application to the instant case, that is governed by section 9.

But plaintiff contends that defendant in error "gave no testimony outside of his name and address, but merely produced the books of the corporation. . . . The record shows that defendant gave no evidence in respect to the books. *He gave no evidence implicating himself.''* (Italics ours.) As we have heretofore stated, the record shows conclusively that defendant in error produced documentary evidence which implicated him in fraud touching the tax return under investigation. We may add, however, that section 9 does not provide nor contemplate that the evidence given by a witness before the examiner must implicate him in fraud touching the return under investigation to entitle him to immunity.

There is no merit in plaintiff's further contention that while defendant in error at the time of the hearing

before Durschlag objected to being questioned as to the books, records, etc., he did not specifically object to producing the books, records, etc., and therefore he cannot claim immunity under section 9. When defendant in error appeared before the employee of the Department, in response to the subpoena *duces tecum* served upon him, testified and produced the books, records, etc., in question, the immunity provision of section 9 at once took effect. If a layman, unversed in the law and having no actual knowledge that there was such a statute as section 9, appears before the examiner holding an investigation under section 8 in response to a summons, gives evidence, oral or documentary, in the matter under investigation, the statute gives him immunity "for, or on account of, any transaction made or thing concerning which he may testify or produce evidence, documentary or otherwise."

The language of section 9 is so plain and unambiguous that it requires no judicial interpretation. Defendant in error, under the record, could not be prosecuted or subjected to any criminal penalty for, or on account of, any transaction made or thing concerning which he had testified or produced evidence, documentary or otherwise, before the employee of the Department of Finance.

The judgment of the criminal court of Cook county quashing the indictment against defendant in error is affirmed.

*Judgment affirmed.*

JOHN J. SULLIVAN and FRIEND, JJ., concur.