THE PEOPLE *ex rel.* OAK SUPPLY & FURNITURE Co., Plaintiff-Appellee, *v.* THE DEPARTMENT OF REVENUE *et al.*, Defendants-Appellants.

(No. 59630; ▮▮▮▮▮▮▮▮

First District (3rd Division)—October 17, 1974.

William J. Scott, Attorney General, of Chicago, for appellants.

Edward A. Berman and Lewis W. Schlifkin, both of Chicago, for appellee.

Mr. JUSTICE McGLOON delivered the opinion of the court:

This case involves the interpretation of section 10 of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1971, ch. 120, par. 449). Pursuant to the statute, the plaintiff corporate taxpayer under investigation for alleged non-compliance with the Retailers' Occupation Tax Act requested the Illinois Department of Revenue hearing officer to issue subpoenas duces tecum to two named individuals, but the hearing officer refused to do so. The taxpayer corporation brought an action for a writ of mandamus in the circuit court of Cook County to compel the issuance of the subpoenas. The circuit court interpreted the statute in favor of the taxpayer and issued the writ. The Department of Revenue appeals from this order, claiming that the trial court erred in its interpretation of the statute.

We affirm.

The pleadings reveal the following facts. On June 28, 1972, the Department of Revenue of the State of Illinois issued a notice of tax liability to the plaintiff corporate taxpayer, Oak Supply and Furniture Co., for alleged revenue deficiencies under the Retailers' Occupation Tax Act, the Use Tax Act, and the Service Tax Act. The taxpayer (Oak) contested its liability and the matter was set for a hearing before the Department's hearing officer.

Prior to the hearing, Oak sent the following letter to the hearing officer:

"This letter will serve as a request that you issue Subpoenae to Lennard Jelinek and Sheldon Copeland at Oak Supply and Furniture Co., 723 West Jackson Boulevard, Chicago Illinois, requesting that they appear for the hearing in this matter on April 10, 1973, at 11:00 A.M.; and that they bring with them at that time the following: [Oak's business records]  *  *  *."

Such a request for subpoenas is authorized by section 10 of the Retailer's Occupation Tax Act, which provides that:

"The *Department* or any officer or employee of the Department designated, in writing, by the Director thereof *shall* at its or his own instance, or *on the written request of any other party to the proceeding, issue subpoenas* requiring the attendance of and the giving of testimony by witnesses, and subpoenas duces tecum requiring the production of books, papers, records or memoranda.  *  *  *." (Emphasis added.)

The hearing officer refused to issue the subpoenas because the two named individuals were employees of Oak and the officer felt a subpoena would have been unnecessary for Oak to produce its own records, if it

wished to do so in its own defense. Furthermore, section 9 of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1971, ch. 120, par. 448) provides automatic transactional immunity from criminal prosecution to a natural person who testified at a Department of Revenue investigation or hearing pursuant to subpoena. The Department alleged that had it issued the two subpoenas as requested, section 9 immunity would have automatically attached to Jelinek and Copeland, and the State would not have been able to pursue the criminal charges then pending against the two gentlemen under section 13 of the Act (Ill. Rev. Stat. 1971, ch. 120, par. 452), pertaining to the filing and signing of the allegedly fraudulent returns upon which the corporation's tax deficiency was based. Subsequent to the circuit court's ruling and prior to the oral arguments in this case, the criminal charges against Jelinek and Copeland reached disposition.

Oak's position is that section 10's specific language makes the issuance of subpoenas by the Department of Revenue a purely ministerial function to be exercised without resort to discretion. "The Department * * * shall * * * on the written request of any other party to the proceeding, issue subpoenas * * *." Further, Oak stresses that the criminal charges which prompted the Department's original reluctance to issue the subpoenas are now moot, leaving only Oak's action for a writ of mandamus for this court's determination, without need to consider the implications of section 9's automatic immunity provisions.

The Department of Revenue's contention on appeal is that such a narrow construction of section 10 is contrary to the legislative intent and purpose because it amounts to an abuse of the subpoena power and effectively nullifies the criminal provisions of section 13. It is argued that the legislature never intended that section 10 coupled with section 9's automatic immunity provision would enable a corporate taxpayer suspected of having filed false Retailers' Occupation Tax returns to shield its employees from personal criminal liability merely by asking the Department of Revenue's hearing officer to issue subpoenas to the allegedly culpable parties.

The Department submits instead that section 10 should be read as compelling the issuance of subpoenas at the request of a party in all cases *except* where that party can voluntarily produce the persons or documents requested. It is alleged that the two named individuals were obligated, by the nature of their relationships with the corporation, to testify and produce records on behalf of the corporation. The Department concludes that since Oak can voluntarily produce Jelinek, Copeland, and the records, Oak does not have a legitimate need for the requested subpoenas.

■■ The Retailers' Occupation Tax Act must be read as a whole, not-

withstanding Oak's contention that we should not consider the now-moot criminal immunity implications raised by section 9. Reading sections 9 and 10 together, we agree with the State's argument that these statutes can bring about bizarre results that may subvert the expected course of criminal prosecution of those persons accused of filing fraudulent Retailers' Occupation Tax returns, but we hold, for the reasons expressed herein, that the statutes require such a construction. It is for the courts to construe and interpret statutes that are vague or ambiguous so that the legislative intent is given its proper effect, not to give different meanings to clearly written statutes which reflect the content intended by the General Assembly. A court cannot "usurp the province of the legislature in the making of laws nor ignore the plain language of the statute. The making of laws lies in the province of the legislature. A court has no right to say that the legislature did not mean what in plain language it said," (*Fowler v. Johnston City & Big Muddy Coal and Mining Co.* (1920), 292 Ill. 440, 452) and must give effect to the legislature's intention regardless of the consequences. 34 I.L.P. *Statutes* § 116 (1958); *Louisville & N.R.R. Co. v. Industrial Board* (1917), 282 Ill. 136, 140, 118 N.E. 483.

■■ Accordingly, we find that section 10 of the Retailers' Occupation Tax Act compels the Department of Revenue to issue subpoenas upon the written request of any party to its proceedings, notwithstanding that certain culpable individuals may escape criminal liability due to the operation of section 9. We base our decision upon the language of the statute, the legislative intent, and the rule of strictly construing revenue laws against the government.

First, we consider the language of the statute, which uses the word "shall." The Department's position is that "shall" can be read as either mandatory or directory, depending upon the legislative intent, citing *Zbinden v. Bond County Community Unit School District No. 2* (1954), 2 Ill.2d 232, 117 N.E.2d 765. The rule in *Zbinden* can be easily distinguished from the facts at bar by an understanding of the terms "mandatory" and "directory." Questions of whether a statute is mandatory or directory arise when a governmental official or body has failed to follow a statutory instruction and the consequences of such failure must be determined. 2A Sutherland, Statutes and Statutory Construction § 57.01 (4th ed. Sands 1973) provides an accurate categorization of the consequences of such failure (at 413): "If the violation or omission is invalidating, the statute is mandatory; if not, it is directory." In the instant case, we do not have a problem involving the question of whether the Department's investigations or acts are invalid because it failed to issue the subpoenas as requested; rather, the problem under consideration is whether the word "shall" can be construed as being either mandatory

or discretionary. Simply put, does "shall" mean "may" in the context of section 10 of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1971, ch. 120, par. 449)?

In *Canal Commissioners v. Sanitary District* (1900), 184 Ill. 597, 56 N.E. 953, the Illinois Supreme Court held that the word "shall" can be construed as "may" where the legislative intent would so indicate. In that case, the question was whether the Sanitary District of Chicago had the duty (shall) to remove two expensive dams from the Illinois River even though such an act would make the then-thriving Illinois and Michigan Canal non-navigable and cause the loss of toll revenues. The court found the word "shall" to mean "may" in light of the legislative intent, which the court said was not to destroy the Illinois and Michigan Canal's benefits to the people of the State of Illinois. Accord, *Cooper v. Hinrichs* (1957), 10 Ill.2d 269, 140 N.E.2d 293.

■■ To properly construe "shall," we must determine the legislative intent, and to do so we shall utilize two rules of statutory construction. First, we follow the rule as set forth in *Certain Taxpayers v. Sheahen* (1970), 45 Ill.2d 75, 84, 256 N.E.2d 758, 764.

> "The primary rule in the interpretation and construction of statutes is that the intention of the legislature should be ascertained and given effect. [Citation.] The legislative intent should be sought primarily from the language used in the statute. Where the language of the act is certain and unambiguous the only legitimate function of the courts is to enforce the law as enacted by the legislature. [Citations.] It is never proper for a court to depart from plain language by reading into a statute exceptions, limitations or conditions which conflict with the clearly expressed legislative intent."

■■ Applying the rule to the facts in this case, we find that the use of "shall" was intended by the legislature to make the issuance of subpoenas by the Department of Revenue mandatory because the language in the statute is certain, unambiguous, and capable of no other reasonable interpretation.

■■ The second rule we follow regarding the determination of the legislative intent is that the legislature is presumed to know the effect of statutes that have already been construed by the courts. (*People v. Hairston* (1970), 46 Ill.2d 348, 263 N.E.2d 840, *cert. denied,* 402 U.S. 972.) In *People v. Finkelstein* (1939), 299 Ill.App. 363, 20 N.E.2d 290, *rev'd on other grounds* (1939), 372 Ill. 186, 23 N.E.2d 34, the State attempted to prosecute an individual under the Revenue Act's criminal provisions after that person testified concerning his corporate employer pursuant to a Department of Finance (now Department of Revenue)

subpoena. The court interpreted section 9, which is the same today as it was then, to be "so plain and unambiguous that it requires no judicial interpretation," (299 Ill.App. at 381) conferring immunity upon the accused corporate employee.

■■ Since the legislature has not mod fied section 9 in the 35 years since *Finkelstein* was filed, we must assume that it recognizes and approves of the automatic immunity provision and considered the section's effect when used in conjunction with section 10, the statute in question.

We note, however, that this court has not been asked to rule upon the current substantive validity of *People v. Finkelstein, supra,* and expressly does not make such a decision in this case. A recent article, *Witness Immunity Statutes in Illinois—Time For a Change,* 7 John Marshall J. Prac. & Proc. 175, 182 (1973), questions whether *Finkelstein* would ever be followed, and we do not intend, in the context of this case, to answer this question or provide any dicta for use in such a future case, should one ever arise. Our use of *Finkelstein* is limited to noting that the legislature should have had not ce of its existence and apparent effect at the times the General Assembly enacted and amended section 10 (Ill. Rev. Stat. 1971, ch. 120, par. 449).

■■ Finally, this court is gu ded by the spec fic rule for the construction of revenue statutes as set forth most recently in *City of Chicago v. Neher* (1972), 5 Ill.App.3d 22, 25, 282 N.E 2d 521, 524. In that case, Justice Leighton wrote, "* * * we are bound by the princ ple that revenue laws should be given liberal and reasonable construction, but in case of doubt they must be construed strictly against the government and may not be extended by impl cation."

■■ In the instant case, this rule clearly precludes the extension of section 10 to include the concept of discretion on the part of the Department of Revenue when asked to issue subpoenas by a corporate taxpayer under investigation.

For the abovementioned reasons, the judgment of the circuit court of Cook County granting the writ of mandamus is affirmed.

Judgment affirmed.

DEMPSEY and MEJDA, JJ., concur.